## ADOLF BOETTGER *vs.* JULIA LIPPITT MAURAN.

APRIL 8, 1940.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

BAKER, J. This is an action of trespass on the case for negligence in which, after a trial in the superior court, a jury returned a verdict for the plaintiff for $4500. The case is now before us on a bill of exceptions duly prosecuted by the defendant after the trial justice had denied her motion for a new trial.

The principal facts of the case are not in serious dispute. In general it appeared from the evidence that, after some negotiations, the plaintiff, an experienced gardener and greenhouse man, started to work for the defendant, on April 13, 1937, on the latter's farm in Cranston, in this state. At this time the defendant, as a hobby, maintained on her farm a greenhouse which was under her personal direction and control. Attached to the greenhouse proper was a potting shed from which direct entry was had into the boiler shed and pit. The boiler shed floor, which was a step or two below the level of the floor of the potting shed, consisted of a platform, so-called, constructed of matched spruce boards resting for support upon an iron pipe and joists. From this platform, which did not run the full length of the boiler shed, access was had to the boiler pit itself by means of a short flight of steps. This pit, part of which extended under the platform above referred to, was three feet eight

inches below the level of the platform and contained, among other things, the boiler which furnished heat for the greenhouse. One of the plaintiff's duties was to tend the fire in this boiler so that the proper temperature might be maintained in the greenhouse.

The steps just mentioned, four or five in number, descended at a rather steep pitch from the platform to the floor of the pit. They were constructed of wood with treads but no risers and had no handrail. The lower part rested on the cement floor of the boiler pit and the upper end against the edge of the platform. This flight of steps was not secured, fastened or attached in any way. On April 24, 1937, between 4 and 4:30 o'clock, p. m., the plaintiff started to go down the steps in question in order to tend the fire in the boiler. While he was on the steps, facing forward, they suddenly fell or slipped to the floor of the boiler pit, thereby causing him to be thrown lengthwise upon his back onto such steps, which, after the fall, were underneath him. As a result of this accident the plaintiff's back was injured.

His declaration contains several counts. For present purposes the important allegations therein are, in substance, a failure on the part of the defendant to provide for the plaintiff a reasonably safe place in which to work, particularly in relation to the steps in question, and also a failure to warn him of the alleged dangerous and unsafe condition of such steps. It is admitted that the workmen's compensation act has no application in the instant case, and that the defendant has the right to avail herself of all common-law defenses proper in a case between master and servant.

The defendant contends that the trial justice committed error when he denied her motion for a directed verdict. This motion was based upon two grounds. First, that the evidence showed that, as a matter of law, the plaintiff assumed the risk in going upon the steps in question; second, that if

the proximate cause of the accident was the negligence of any person, it was the negligence of a fellow servant. Upon consideration, we are of the opinion that the defendant's contention cannot be supported on either ground, and that the trial justice ruled correctly when he denied the defendant's motion.

Her claim that, under the facts appearing in evidence, the plaintiff, as a matter of law, assumed the risk when he used said steps is based largely on the decision of this court in *Sheridan* v. *Gorham Manufacturing Co.,* 28 R. I. 256. In that case, however, it appeared that the instrumentality, the use of which caused the plaintiff's injuries, was a ladder, which was held by the court to be an ordinary hand tool, knowledge of the obvious imperfections of which was chargeable to the servant and to the master equally. The above-cited case is clearly distinguishable on its facts from the instant case. The evidence before us shows that the steps, while movable, were not constructed or used as a ladder. They had been adjusted so as to make them suitable for permanent placement in the boiler pit and were being used there. They could not, in our judgment, properly be held, as a matter of law, to be a hand tool similar to an ordinary ladder, so as to cause the application, in the present case, of the above rule of law that a servant assumes the risk of obvious imperfections when he uses such a tool.

As bearing upon the defendant's contention that the evidence shows, as a matter of law, that the proximate cause of the plaintiff's injury was the negligence of a fellow servant, the following undisputed facts appearing in evidence are pertinent. Some time prior to the happening of the occurrence involved herein the steps in question had been obtained by the defendant from a dismantled greenhouse on another estate. After being kept by her in storage for some time, they were later set up in the boiler pit in her greenhouse, following a fire therein. They were placed there,

about a year before the accident took place, by one Smyth, the defendant's foreman, assisted by a carpenter who fitted them into position. The cement floor of the boiler pit was uneven, and a drain about an inch deep ran along the floor close to where the steps stood.

Smyth, who ordinarily did not have oversight of the greenhouse work, the plaintiff being directly under the defendant's control, apparently installed the steps on his own initiative and not at anyone's suggestion, and he and the defendant did not discuss the fact that the steps were unattached. However, he showed the plaintiff around the greenhouse and the boiler pit when the latter entered the defendant's employment. About a week before that date Smyth had taken the steps down for a short time, in order to go underneath the platform, but had replaced them in the same position in which they had stood since they were originally set up, and apparently they so remained until the. accident happened. There was no evidence that anyone else moved the steps or changed their position.

This court has held that the character of the act, and not the position held by the servant, is the criterion of fellow service. In *Hanna* v. *Granger*, 18 R. I. 507, at page 512, the following language from another case is approved as setting out the correct rule: "Those cases which preserve the fellow servant rule in its full integrity, bring the facts of each case to the test, not of the rank of the negligent servant, but of the character of the negligence from which damage results. Did the master owe to his servant a duty as master? Answer the inquiry in the affirmative, and he cannot escape a careless discharge of that duty by shifting the burden to the shoulders of a servant, however inferior his position may be. It is the negligence of the master himself, because that was carelessly done which he was bound to have carefully performed." See also *Crandall* v. *Stafford Mfg. Co.*, 24 R. I. 555; *Clavin* v. *William Tinkham Co.*, 29 R. I. 599.

In conformity with the above general rule, it has been held that the duty of furnishing a servant a reasonably safe place in which to work is an obligation which is imposed upon the master and which he cannot delegate to another. If the performance of this duty is entrusted to an employe, the latter stands in the place of the principal and will not be regarded as a fellow servant if another employee is injured by reason of the breach of such duty. *Burke* v. *National India Rubber Co.*, 21 R. I. 446; *Vartanian* v. *N. Y., N. H. & H. R. R. Co.*, 25 R. I. 398. 18 R. C. L. 735. The same rule is applicable in connection with the duty of a master to warn his servant as to dangers which are not obvious, and of which the former had or should have had knowledge. 18 R. C. L. 732. The case of *Frawley* v. *Sheldon*, 20 R. I. 258, cited by the defendant, is not contrary to the principles of law above set out. In that case the act of negligence complained of, the careless dropping of a hook by a foreman, was stated by the court to be an act "into which the element of his superiority as a servant did not enter".

Assuming that there was evidence in the present case which tended to support the contention that Smyth was guilty of negligence in placing or setting up the steps in question, it is clear that, under the holdings above referred to, such negligence was not the negligence of a fellow servant which could be set up by way of defense against the plaintiff's claim. This is so because such negligence, if any, related to the furnishing of a reasonably safe place in which to work, or to the warning of dangers not obvious, duties which the defendant could not delegate.

In our opinion, therefore, under the evidence submitted, the question of the negligence of a fellow servant does not enter into this case. Such evidence, in our judgment, raised questions of fact to be determined by the jury as to whether or not the defendant was guilty of negligence, and the plaintiff of contributory negligence, in connection with the

accident in question. The defendant's exception to the refusal of the trial justice to direct a verdict in her favor is overruled.

The defendant also has an exception to the action of the trial justice in refusing to submit to the jury two issues for special findings. We have examined these issues and are of the opinion that this ruling was correct. We recently had occasion to discuss fully the law in relation to the matter of special findings by a jury, and we reviewed the prior decisions of this court on that point. See *Connolly* v. *Seitman*, 64 R. I. 29, 9 A. 2d 866. A detailed consideration of the subject may be found in that opinion.

Defendant's requested issue numbered 2 was as follows: "At the time of the accident was the plaintiff without means of knowing that the steps were not attached to the flooring?" This issue was apparently based on certain language used in the first and second counts of the plaintiff's declaration in connection with allegations that he was in the exercise of due care at the time of the accident. In our judgment such issue was stated too broadly and, if submitted, might tend to confuse the jury. Even if answered affirmatively, the rights of the parties would not be decisively determined or the general verdict necessarily affected by such an answer, as the issue contained in the request was immaterial. The plaintiff might have had means of knowing that the steps were not attached at the time of the accident, but the law clearly does not require that, for him to recover, he must lack the means of knowing that fact, but merely that he did not know or could not reasonably be held to have known of it. Under all the circumstances, the defendant was not entitled as a matter of right to have the trial justice submit to the jury this issue for a special finding.

The defendant's requested issue numbered 5 was as follows: "Were the steps placed in the position in which they were at the time of the accident by a fellow-servant of the

plaintiff?" This issue, besides raising a question of law, in our opinion, was not involved in the instant case, and was properly not submitted to the jury. The matter is covered by our consideration of the subject when we passed upon the defendant's exception to the refusal of the trial justice to direct a verdict in her favor. The defendant's exception to his ruling in connection with the above requests for special findings is, therefore, overruled.

At the close of the evidence the defendant moved that the first two counts of the plaintiff's declaration be withdrawn from the consideration of the jury, on the ground that there was no evidence to support the allegations therein that the plaintiff was without means of knowledge as to the unattached condition of the steps. The trial justice denied this motion and his ruling is the basis of an exception by the defendant. For the reasons set out above, under the discussion of her exception to the refusal of the trial justice to grant her request that the special issue numbered 2 be submitted to the jury, we are of the opinion that the trial justice ruled correctly in denying the defendant's motion to withdraw such counts of the declaration, and her exception in that regard is overruled.

The defendant presses an exception to that part of the charge of the trial justice in which he left it to the jury to decide whether the steps were an ordinary tool, such as a ladder, or were a permanent portion of the building in which the plaintiff was expected to work, instead of charging the jury as a matter of law on that issue. The defendant takes nothing by this exception. In our judgment her rights were not prejudiced by the portion of the charge complained of. On the contrary, she received all the protection to which she was entitled, under the circumstances, when the trial justice left to the decision of the jury the question of the nature of the steps. Her exception to the charge as given is overruled.

The trial justice refused to grant two requests to charge presented by the defendant, and to this ruling she is now urging her exception. We have examined these requests and find that the action of the trial justice in this respect was without error. The first dealt with the control of the plaintiff over the greenhouse and his duty in using the steps in question. In our opinion the gist of that request was substantially covered by the trial justice in his charge, and hence no prejudicial error was committed when he failed to charge on the point in the exact language requested. The other request was on the question of whether or not Smyth was a fellow servant of the plaintiff, and the effect of the former's negligence if such was the situation. We have already held that, under the evidence submitted in this case, the issue of the negligence of a fellow servant is not involved. The defendant's exception under consideration is, therefore, overruled.

After the jury had retired to consider the case they returned to the courtroom to request further instructions as to the meaning of the words "ordinary observation", which appeared in a request for a special finding which had been submitted to them by the court at the request of the defendant. She excepted to the further instructions as given, and is now contending that such exception is good. We cannot agree with her. In the additional instructions certain terms, to which she objects, were used by the trial justice by way of comparison only, and should not be made to stand alone. The additional charge must be taken as a whole, and when so viewed, in our opinion, contained a reasonably accurate definition of the words "ordinary observation", and was unobjectionable. This exception of the defendant is overruled.

She also has several exceptions to the ruling of the trial justice on questions of evidence. These exceptions have all been considered and found to be without merit and are overruled.

The defendant's remaining exception is to the denial by the trial justice of her motion for a new trial based on the usual grounds. On the issue of liability, the pleadings and the evidence raised questions as to whether or not the defendant was negligent in failing to furnish for the plaintiff a reasonably safe place in which to work, and in failing to warn him that the steps were unattached; and also as to whether or not the plaintiff was guilty of contributory negligence and had assumed the risk of an obvious danger.

These questions were properly submitted to the jury for their determination. They involved a consideration, among other things, of the nature and condition of the steps, the manner in which they were set up, how they stood, the purpose for which they were maintained, the number of times the plaintiff had passed over them with safety during the period of his employment, and whether the plaintiff knew, or should have known by ordinary observation, of any danger in connection with the using of such steps. It is undisputed that no warning regarding them was given plaintiff, that they were not fastened to any other part of the greenhouse, and that the plaintiff at no time examined them.

The defendant earnestly contends that it is fairly inferable from the evidence that the plaintiff must have been hurrying at the time of the accident, and that he caused the steps to fall by his manner of descending them, thereby being guilty of contributory negligence. The jury decided this question, and the other disputed questions of fact, in the plaintiff's favor. In response to certain requests for specific findings submitted by the defendant they found that, at the time of the accident, the plaintiff was without knowledge that the steps were not attached to the flooring; that no carelessness of his contributed to the accident and that, by ordinary observation, he could not have seen that the steps were not so attached.

The jury and the trial justice had the advantage, which we have not, of seeing and hearing the witnesses testify. He has approved the verdict both as to liability and the damages awarded, stating that it is supported by the evidence and does substantial justice between the parties. Upon consideration, we are of the opinion that his decision on the question of liability is not clearly wrong and, therefore, following our well-established rule, we find that his denial of the defendant's motion for a new trial, on that issue, was without error.

The defendant, however, in addition, strenuously maintains that the amount of damages awarded by the jury is clearly excessive, and that her motion for a new trial should have been granted for that reason. The evidence showed that the plaintiff's expenses and his actual loss of wages from inability to work, by reason of the accident, amounted to slightly less than $500. Of the verdict, therefore, approximately $4000 was awarded to compensate the plaintiff for his pain and suffering, past and future, and any possible element of permanency growing out of the injury received.

From the evidence it appeared that the plaintiff's fall caused a fracture of the sacrum, "starting on the left side of the wing of the sacrum and extending toward the mid line" and across the spine. Following the accident the plaintiff, who was then thirty-two years of age, was confined to his bed for upwards of two months and was unable to do any work for another two months. Thereafter he worked at irregular intervals until the spring of 1938. At the time of the trial, a year after the accident, he had been steadily employed for some time in New Jersey in a greenhouse on a private estate, doing work similar to that performed by him for the defendant. For about the first eight weeks following the accident the plaintiff suffered considerably, it being necessary at times to give him sedatives so that he could rest. The pain gradually diminished and ultimately largely disappeared, but at the trial he testified that his back

still bothered him, particularly in wet weather and when bending, lifting, shoveling, or remaining long in one position.

The defendant introduced no medical evidence. Doctors for the plaintiff testified that his back would not be normal in the future, although what was meant by the use of that term was not explained with any particularity. They also testified, in substance, that he would very probably, but not necessarily, have at intervals some pain in his lower back permanently, especially under certain conditions; that the region of the sacrum would be likely to remain tender; and that often an arthritic condition develops from such an injury as the plaintiff suffered; but that, in their opinion he would not be incapacitated from working. One doctor testified: "I think he should be able to do the work he's doing but I think he will have pain with it."

The trial justice stated his approval of the amount of the verdict in language which leaves great uncertainty as to the basis for his decision. For example, he said: "The Court does not think that it has any right to substitute its judgment for that of twelve men with twelve heads and twelve backs, all of whom are as well qualified to pass on the value of pain and suffering as the trial justice." Of course, his duty in this connection was to pass upon the amount of the verdict in the light of his independent judgment, not for the purpose of merely substituting his opinion for that of the jury, but in order to determine whether or not the verdict responded truly to the real merits of the controversy on the evidence submitted. *Nichols* v. *New England Tel. & Tel. Co.*, 57 R. I. 180. We are not satisfied from his rescript that he performed that duty in the instant case and, therefore, his formal approval of the amount of the verdict does not carry the weight which we would ordinarily accord to such a decision.

Under these circumstances, we have given careful consideration to the evidence relating to the question of damages.

After so doing, we have come to the conclusion that the damages awarded are clearly excessive. At the time of the trial the plaintiff was apparently well except for the intermittent pain as described by him. As hereinbefore indicated, he had then been working for some time. The testimony of the doctors as to the future extent and severity of the pain in question was indefinite and left much to conjecture and speculation. One doctor, a witness for the plaintiff, testified on cross-examination as follows: "Q. I want to be absolutely fair, Doctor, but it is a toss-up as to whether those things will entirely clear up or whether they will last? A. That is right."

There is no doubt that the plaintiff's injury was severe; that he suffered greatly for some months after the accident; that at the time of the trial the lower part of his back was painful under certain conditions; and that in the future for an undetermined period, possibly permanently, he may have intermittent pain in that region. However, in view of the fact that the plaintiff's monetary loss is something less than $500, and that he admittedly made a good recovery and, at the time of the trial, was working at his regular occupation, an award of $4000 solely for such pain and suffering under the evidence in the instant case is, in our judgment, clearly excessive. The size of the verdict indicates to our minds that the jury must have mistakenly considered that the severity of the plaintiff's pain and suffering during the months immediately following the accident continued substantially up to the time of trial, and might be continued in the future with only slight diminution, a conclusion not warranted from the evidence herein; and that they also overlooked the element of uncertainty in the medical testimony regarding the extent of pain and suffering in the future. We find, therefore, that the trial justice erred in approving the amount of the verdict as returned by the jury, and the defendant's exception to his ruling in that

regard is sustained.  See *Peters* v. *United Electric Rys. Co.*, 57 R. I. 311.

It is obviously impossible to award with exactness compensation for pain and suffering, particularly when looking into the future.  Compensation to the plaintiff which is fair to both parties involved is the result sought.  Upon consideration of the evidence in the instant case, we are of the opinion that the sum of $3000 for pain and suffering plus $500 for his monetary loss would reasonably compensate the plaintiff without unjustly penalizing the defendant.

All of the defendant's exceptions, therefore, are overruled except her exception to the refusal of the trial justice to grant her motion for a new trial, and this exception is sustained solely on the ground that the damages awarded by the jury are clearly excessive.

The case is remitted to the superior court for a new trial, unless the plaintiff, on or before April 19, 1940, shall file in the office of the clerk of the superior court a remittitur of all such verdict in excess of $3500.  If the plaintiff shall file such a remittitur, the superior court is directed to enter judgment on the verdict as reduced by the remittitur.

*Roland E. Meunier, Carroll & Dwyer, Edward F. J. Dwyer,* for plaintiff.

*Edwards & Angell, Patrick H. Quinn, William H. Edwards,* for defendant.