Michael DelVecchio *vs.* Edward T. O'Leary.
Michael DelVecchio *vs.* Edna E. Warner *et al.*

FEBRUARY 24, 1964.

Present: Condon, C. J., Roberts, Powers and Joslin, JJ.

POWERS, J. These are actions of trespass on the case for negligence brought to recover damages for personal injuries allegedly resulting from the negligent operation by the defendant O'Leary of a motor vehicle owned by the defendant Warner. The cases were consolidated for trial before a superior court justice, sitting with a jury, and resulted in verdicts for the plaintiff. They are before us on the defendants' bills of exceptions, the sole exception in each bill being to the denial of their motions for new trials.

Since the issue in each case is identical, we will consider only the exception of defendant O'Leary. Our decision in that case, however, will also be dispositive of the exception taken by the other defendant.

It is established by the record that on the evening of November 19, 1959, plaintiff and Ralph Gigliotti were passengers in an automobile operated by Peter Gigliotti, a brother of the passenger Ralph. The car was traveling along Huntington avenue in the city of Providence, approaching the intersection at Cranston street, when the operator stopped for a red traffic signal. Within a few seconds it was struck in the rear by an automobile operated by Edward T. O'Leary but owned by and registered to Edna E. Warner.

It appears that plaintiff was sitting in the front seat and was thrown forward by the force of the collision. He testified that he felt little pain at the time and, questioned by a police officer called to the scene, stated, "Oh, we'll be all right. We'll live through this." On arriving home, however, he had pain in his right wrist, elbow, shoulder and leg and the following day called on Dr. Agostino Sammartino.

Doctor Sammartino testified that plaintiff complained of the symptoms experienced the previous evening and also of nausea and vomiting. The doctor diagnosed plaintiff's injuries as "low back sprain, whiplash injury to the neck, strain of the muscles of the right shoulder * * *." He referred plaintiff to Dr. Butler for X rays and the report thereof was negative as to fractures or any abnormality which could be attributable to the accident.

Doctor Sammartino administered diathermy treatments, recommended a hard mattress and a back support, and continued to see plaintiff several times weekly thereafter. He testified that when, after six weeks, plaintiff did not respond as satisfactorily as might be expected, he referred him to Dr. Caroll M. Silver, an orthopedic surgeon; that the doctor-patient relationship was continuing at the time of the trial some forty months after the accident; and that he believed plaintiff would continue to need treatment.

Doctor Silver testified that as a result of his examination and X rays he diagnosed plaintiff's injuries as a myofascial,

lumbosacral strain and cervical strain with advanced healing. He recommended continued physiotherapy, vitamin B-12 injections, the wearing of a lumbosacral support; but referred plaintiff back to Dr. Sammartino for weekly treatments and supervision. He, however, continued to check plaintiff's progress periodically.

It further appears that following the accident plaintiff did not return to work until June 6, 1960. He testified that he was not able to work. Doctor Sammartino testified that he felt plaintiff was unable during the period of unemployment to do work of any kind, while Dr. Silver felt that he might do light work but could not return to his regular employment.

On December 1, 1959, some twelve days after the accident, plaintiff was examined by Dr. Joseph C. Johnston at the request of defendant. He testified that although plaintiff complained of the same injuries as those related to Doctors Sammartino and Silver, he found no evidence of trauma and felt that plaintiff was able to return to his work. He did, however, refer to plaintiff as "not totally incapacitated."

It further appears that on the element of damages, Dr. Sammartino's bill for services and medication was $1,147, while Dr. Silver's bill amounted to $305. Both doctors testified to the necessity of the treatments and the value of their services. The plaintiff testified that at the time of the accident his weekly gross earnings were $93.60 for a forty-hour week, which however included ten cents an hour for the type of work he had been doing but which he was unable to do on his return to work in June 1960. The out-of-pocket loss in wages approximated some $2,600 and there was the question of reduced earnings thereafter.

The total damages presented for consideration by the jury were slightly in excess of $4,000. The jury returned a verdict for plaintiff in each case in the sum of $17,000.

Although defendants urge in their brief that they are entitled to a new trial on all issues, presumably intending to include that of liability, they made no such argument before us nor could they successfully do so. In his decision on their motions for new trials, the trial justice commented succinctly, but pointedly, on the evidence relating to liability and found their motions to be without merit in such regard. In our judgment his decision on the issue of liability was not clearly wrong and will not therefore be disturbed.

The defendants have, however, both briefed and argued two contentions, namely, that the trial justice failed to exercise his independent judgment in passing on the verdicts, since the evidence did not support plaintiff's claim of actual damages amounting to some $4,000; and that the size of the verdicts, even viewing the evidence most favorably to plaintiff, was so grossly excessive as to shock the conscience of the court.

They contend that the view of the evidence taken by the jury is so greatly at odds with the testimony of the three doctors and even that of plaintiff, as to demonstrate that the trial justice failed to pass upon either evidence or credibility in the exercise of his independent judgment as required. *Martinelli* v. *Steiner*, 84 R. I. 339; *Baker* v. *Kinnecom*, 68 R. I. 453.

We are not persuaded that the trial justice did not comply with the rule insofar as he was required to give this court the benefit of his independent judgment in passing on the weight of the evidence as well as the credibility of the witnesses. It is apparent from his decision that he understood his duty and proceeded to do it consistent with the approved standard.

The defendants further contend, however, that, assuming plaintiff's claim of out-of-pocket damages was supported by the evidence, the testimony of plaintiff's own doctors and

even that of plaintiff could not support a finding by the jury that the pain and suffering experienced by him warranted an additional $13,000. They point in detail to several phases of the evidence which they argue support their contention and render the verdicts so grossly excessive as to fall within the rule enunciated by this court in *Di Vona* v. *Lee*, 42 R. I. 375, and *Armes* v. *United Electric Rys.*, 74 R. I. 450.

It would appear from a study of the trial justice's decision on their motions that they made a similar argument before him. He, however, felt that the jury was warranted in taking the opposite view and, although the verdicts may have been higher than he would have awarded if the determination were his to make in the first instance, he could not say that they were wrong. He added, "but the sum is not such that this Court feels that it shocks the conscience of this particular Court."

Prescinding from whatever merit there may be in this contention, we are, however, disturbed about an observation that he made and which defendant argues is clear error. Commenting upon the size of the verdict, he stated, "It may be that the Jury did find as it did on account of trial counsel's conduct during the course of the trial in behalf of the defendant, but this Court cannot clearly state that the Jury's verdict was due solely to the conduct of trial counsel in behalf of the defendant during the course of this trial."

A reading of the transcript of the trial reveals that the trial justice repeatedly felt it to be his duty to admonish defendants' counsel as to trial tactics and it seems equally clear that he made the comment in the belief that the jury may have been so influenced by counsel's conduct as to have been improperly motivated in assessing their verdicts. We have heretofore held that it is the duty of the trial justice to grant a new trial when, in his opinion, the jury was improperly influenced or acted from passion, prejudice or par-

tiality. *Wilmot* v. *Bartlett,* 37 R. I. 568; *Hickey* v. *Booth,* 29 R. I. 466.

That the trial justice in the·instant case was satisfied that the verdicts were at least partially motivated· by an influence not related to the evidence is indicated by the fact that he could not go so far as to say otherwise. No other conclusion is possible from his reference to such motivation, even though subsequently qualified. In our judgment, therefore, considering the state of the evidence and his own reservation as disclosed by his comment, it was error not to have granted new trials, conditioned, however on plaintiff's failure to remit a substantial portion of the verdicts.

As was said in *Tilley* v. *Mather,* 84 R. I. 499, this court has never adopted a formula nor recognized a so-called "rule of thumb" for computation of the damages to be awarded for pain and suffering. We have, however, exercised our independent judgment where the trial justice has failed to do so and awarded a new trial to a defendant conditioned on the plaintiff's failure to submit to a remittitur assessed by this court. *Boettger* v. *Mauran,* 64 R. I. 340.

In the case at bar we are of the opinion that the sum of $6,000 will compensate the plaintiff for pain and suffering and do justice between the parties. The decision of the trial justice that the jury was warranted in finding actual damages in the sum of $4,000, however, is not clearly wrong.

In each case the defendant's exception to the denial of the motion for a new trial is sustained solely on the ground that the verdict is excessive, and each case is remitted to the superior court with direction to grant a new trial on the question of damages only, unless the plaintiff on or before March 2, 1964, shall file in the office of the clerk of that court a remittitur of all of the verdict in excess of $10,-000. If such remittiturs are filed, the superior court is di-

rected to enter judgment in each case on the verdict as thereby reduced.

*Arcaro, Belilove & Kolodney, Samuel J. Kolodney,* for plaintiff.

*Carroll & Dwyer, John G. Carroll,* for defendants.