217 A.2d 922.
RAYMOND J. CHASE *vs.* DIMEO CONSTRUCTION COMPANY.
MARCH 31, 1966.

PRESENT: Roberts, C. J., Paolino, Powers and Joslin, JJ.

Powers, J. This action of trespass on the case was brought to recover damages for personal injuries which resulted when the plaintiff slipped on an icy sidewalk curbing occasioned, he alleged, by the negligence of the defendant. It was tried to a jury before a superior court justice and resulted in a verdict for the plaintiff in the sum of $6,500. The case is before us on the defendant's bill of

exceptions to the denial of its motions to pass the case, to the denial of its motion for a new trial, and to an evidentiary ruling made during the course of the trial.

The evidence establishes that plaintiff, a bartender by trade and regularly employed at the Arcade Tap in Providence, slipped on an icy sidewalk curbing in front of his home at 165 Angell street in Providence shortly after one o'clock on the morning of December 16, 1961. He was returning to his home by taxicab, having finished his work shortly before. The cab had pulled up to the curb on the left-hand side of Angell street which is one way heading west and, having paid and discharged the driver, plaintiff walked to the rear of the departing taxicab and slipped as aforesaid, striking his right shoulder on the sidewalk curbing.

The evidence further discloses that he got to his feet with some difficulty, hailed a passing taxicab, and was taken to the Rhode Island Hospital where it was determined that he had sustained a fractured dislocation of his right shoulder. After the dislocation had been reduced and the arm placed in a sling, plaintiff was sent home with instructions to return later that morning, which he did. In addition to examinations and treatments at the hospital, plaintiff was under the care of a physician for six weeks but did not return to work for nine.

The defendant has briefed and argued four exceptions which it has compressed into three contentions and it is in such posture that we will consider them.

The defendant's exceptions numbered 3 and 4 were taken to the denial of its motions that the case be passed because of an incident which arose during the third day of the trial. The plaintiff's brother, whose testimony bore on defendant's alleged negligence in connection with the icy condition occasioning plaintiff's injury, had completed his testimony and left the stand when counsel for defendant observed the foreman of the jury speak to plaintiff's counsel and the

latter briefly respond. The defendant's counsel interrupted the swearing in of the next witness by stating to the court he believed a juror had asked a question. The foreman of the jury then stated, "I am sorry. There is no question."

The trial justice, after having the jury removed, ascertained from plaintiff's counsel that the foreman had touched counsel's hand and stated he would like to talk with him at the noon recess, to which counsel replied that he was not permitted to do so. Counsel for defendant, after some exchange between the court and both counsel, moved that the case be passed. The trial justice stated that the situation with which he was confronted was novel in his experience and that he would give the problem further study before coming to any conclusion.

When the jury returned at the opening of the afternoon session the foreman was questioned about the incident. He informed the court that he had recognized plaintiff's brother as a bartender whom he had known some years before and, concerned about the propriety of continuing to sit as a juror, intended to ask plaintiff's counsel if he was out of order in continuing to serve.

Another juror, not the foreman, stated that he also had recognized plaintiff's brother as a bartender who had served him on occasions in the past, but that he did not know him.

After reminding the foreman and the rest of the jurors that they had been instructed not to discuss the case with anyone, the trial justice reviewed the incident and stressed the necessity of having each juror mentally and emotionally conditioned to render a verdict based only on the evidence and free from partiality and prejudice. He also stressed the desirability of giving every litigant his day in court without delay and inquired of the jury whether what had happened would prevent any of them from fulfilling their sworn duty to do justice between the parties.

The members of the jury, including the foreman, assured the trial justice that they were fully competent to render

a verdict based only on the evidence and the law as it would be given to them by the trial justice and, satsified that no one had been prejudiced, he exercised his discretion and denied defendant's motion to pass. Counsel for defendant duly excepted. This exception is the first of the two on which defendant's first contention is predicated.

The trial justice, for reasons not connected with the case at trial, then excused the jury to a later day. After the jury had left, counsel for defendant, calling the court's attention to the fact that the motion to pass was denied and exception thereto taken in the presence of the jury, renewed his motion on the grounds that the court's error, if any, had been compounded and his motion was denied, the court noting counsel's exception.

In connection with its first contention, namely, that the refusal of the trial justice to pass the case constituted prejudicial error, defendant argues as to its first such exception that the statements made by the foreman and fellow juror in the presence of the full jury created an atmosphere which, in the totality of the circumstances, was prejudicial to it. Moreover, defendant suggests, citing *Shefelker* v. *First National Bank,* 212 Wis. 659, 667, that to secure respect for verdicts by the parties or the public it is quite as important that there should be an appearance of fairness as that the trial should in fact be fair.

We are not persuaded that the totality of circumstances is such as to warrant this court to conclude that the refusal of the trial justice to pass the case constitutes prejudicial error. His decision that the incident did not constitute cause for passing the case was an exercise of his judicial discretion and should not be disturbed unless it appears that it was an abuse thereof. See *Kaul* v. *Brown,* 17 R. I. 14, *Clarke* v. *Town Council,* 18 R. I. 283, *Butts* v. *Union R. R.,* 21 R. I. 505, and *Hathaway* v. *Reynolds,* 44 R. I. 239.

None of the foregoing cited cases is exactly in point for each of them brought into issue conduct of a juror appar-

ently not known to the appellate until after the jury had returned its verdict and the prejudicial nature of such conduct was raised on a motion for a new trial rather than that the case be passed. Thus, insofar as we have been able to determine, the circumstances of the instant case raise a question of first impression in this jurisdiction and we have turned to the cited cases for such enlightenment as they might afford by way of comparative study. In *Hathaway* v. *Reynolds, supra,* this court held that if the impropriety learned of after trial were such as would have warranted the trial justice to find a challenged juror as standing "indifferent in the cause" on his voir dire, such impropriety would not justify a reversal of the verdict.

In the instant case the circumstances which prompted defendant to make its original motion do not, in our judgment, tend to show that any member of the jury did not "stand indifferent in the cause" as provided by G. L. 1956, §9-10-14, successor to the statutory provision considered in the *Hathaway* case. Indeed, the conduct complained of evinced rather a concern for the rights of defendant, albeit untimely and unsuitably exhibited.

Even so, defendant further contends that the decision of the trial justice, when made in the presence of the jury, forced it to identify defendant as the complaining party when it claimed an exception and this circumstance was clearly prejudicial. The argument is more plausible than persuasive.

The trial justice in denying the second motion stated that, in addition to the cautionary instructions already given, he intended to instruct the jury again on their obligation to consider only the evidence and ignore the incident as though it had never occurred. An examination of his charge discloses that he did. In *Fiske* v. *Paine,* 18 R. I. 632, 636, this court stated, "The decisive test is the fact of a fair trial." That defendant did not believe it had been deprived of a fair trial on the issue of liability is obvious from the

fact that, in arguing its exception on the denial of its motion for a new trial, it contends only that the damages are excessive. In the view we take of that exception, considered *infra,* we are constrained to hold that the refusal of the trial justice to pass the case, although made in the presence of the jury, did not deprive defendant of a fair trial. The defendant's exceptions as to its first contention are therefore overruled.

The defendant's second contention, namely, that the trial justice erred in denying its motion for a new trial, is predicated on its exception numbered 15. As previously noted, defendant raises no question as to the jury's findings on the question of negligence and we shall consider only its several arguments to the effect that the damages awarded are excessive.

The defendant first argues that plaintiff's claim for nine weeks' loss of wages at an average weekly wage of $70 plus $10 in gratuities was based solely on plaintiff's testimony, uncorroborated by testimony of any one of the three doctors who either treated or examined plaintiff and appeared as witnesses. We know of no rule requiring corroborative medical testimony when the claim is for earnings actually lost. It is a question of weight which the jury might give to plaintiff's testimony that he was unable to work for the time claimed because of incapacity resulting from the injury. Here, moreover, it must be conceded that plaintiff was required to carry his right arm in a sling for six weeks; that his left hand was impaired by reason of a congenital defect and his right arm and hand normally carried a greater burden; that his right thumb had not been fully useful for several years prior to the injury; and that in his calling as a bartender all of these factors made his return to work in less than three weeks from the time the sling was removed most unlikely. Further, Dr. Raymond H. Trott, who examined plaintiff almost three months after the latter

had returned to work, found that plaintiff was still having difficulty making change.

The defendant does not question a bill of $95 for services by the doctor who treated plaintiff, $35 for Dr. Trott's examination, or $25 additional for medical supplies. The special damages then which the jury was warranted in awarding totaled $875.

The defendant does argue vigorously that the balance of the $6,500 verdict being for pain and suffering and permanent impairment to the four fingers of the right hand was grossly excessive and should have been reduced or, in the alternative, the trial justice should have granted a new trial. It is the thrust of defendant's argument in this regard that there was no competent evidence to support a finding of permanent injury resulting from plaintiff's fall. Any award for permanent injury therefor, defendant maintains, must necessarily have been based on speculation or conjecture.

Further, defendant argues that the $5,625 which is the amount in issue, if considered as an award for pain and suffering only is so grossly excessive as to shock the conscience of the court.

There being no contention on the issue of liability, we would order a new trial, limited however to damages, only if we were to hold that the findings of the trial justice on the issue of damages were clearly wrong, conditioned, however, on the refusal of plaintiff to file a remittitur in the superior court in an amount fixed by this court. *DelVecchio v. O'Leary*, 97 R. I. 329, 197 A.2d 759.

In the instant case the trial justice, in passing on the motion for a new trial, acknowledged that there was some divergence of opinion in connection with the medical evidence. but he also pointed to evidence regarding pain and suffering as well as residuals of the fractured dislocation and found that the evidence did not preponderate against the verdict.

Careful scrutiny of the evidence discloses that plaintiff, whose credibility the trial justice felt must have impressed the jury as it did him, testified that the fingers of his right hand were not impaired until after the injury to the shoulder, but that subsequent thereto use of them was increasingly impaired. Doctor Trott testified that when he examined plaintiff five months after the accident the index finger of the right hand had sustained a loss of flexor profundus. Still later, six months after Dr. Trott's examination, Dr. G. Edward Crane, appointed by the court to conduct an impartial examination, found that not only the index finger but the tips of the other three fingers on the right hand were similarly affected. In summary, we conclude that the trial justice, in crediting the jury with drawing the inferences to which the evidence was open, cannot be said to have been clearly wrong. Having reached this conclusion, his decision should not be disturbed. Not being clearly wrong, it is immaterial that his decision could also have been sustained if the trial justice had disagreed to some extent with the jury's award.

The defendant's final contention is that the trial justice erred in striking the latter half of an answer given by Dr. Crane in direct examination, he having been called by defendant as its witness. Counsel for defendant asked the doctor the following question. "Doctor, do you have an opinion based upon your examination of Mr. Chase and your examination of the hospital record as to whether or not the complaints and the findings in so far as the numbness in the index finger and the tips of the other fingers predated the incident of December 15, 1961?"

Doctor Crane replied: "Based on my examination, which was close to eleven months from the injury, the findings were consistent with secondary complications of a dislocated shoulder. With the knowledge of Dr. Dwinelle's examination twelve days later or after the injury, I would have to agree with his opinion that this condition of his

fingers preexisted or existed prior to his dislocation and was not due to the dislocation."

Counsel for plaintiff moved that the second half of the doctor's answer be stricken for the reason that it purported to be Dr. Dwinelle's opinion, taken from the hospital record, and not the opinion of the witness. The objection was sustained and defendant duly excepted.

The thrust of defendant's argument is that Dr. Crane, in that portion of his answer which the trial justice ordered struck, gave not the opinion of another but rather his own opinion based on his examination and the findings of Dr. Dwinelle as set forth in the hospital report which was in evidence. The ruling of the trial justice, it further argues, was prejudicial since Dr. Crane's deleted answer tended to prove that the condition of the index and other fingers on the right hand was not occasioned by the injury to the shoulder, but rather existed prior thereto. At the heart of this is the question of whether defendant's negligence was the proximate cause of a condition which Dr. Crane acknowledged to be permanent.

If the answer to which objection was made and sustained should have been permitted to stand, the ruling of the trial justice would be clearly prejudicial. We are not persuaded, however, that the answer was proper. Fairly read, it seems to us that from it the jury would certainly conclude that the evidence before them included an opinion of Dr. Dwinelle, director of physical medicine at the Rhode Island Hospital, that the condition of the fingers on plaintiff's right hand antedated the fractured dislocation of the shoulder. It was for the jury, however, to draw such an inference from the hospital records if they were so persuaded, and not for Dr. Crane to state it as a fact.

If, as the defendant contends, it only sought to solicit Dr. Crane's opinion predicated on his examination of the plaintiff and the hospital records the plaintiff introduced, the ruling of the trial justice did not preclude the defendant

from posing for Dr. Crane, stipulated to be an expert, a hypothetical question predicated on all the relevant evidence. We hold therefore that the ruling of the trial justice in the premises was not erroneous.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the verdict.

*Roberts & McMahon, John R. Sheehan, William F. Mc-Mahon,* for plaintiff.

*Francis V. Reynolds, Bernard W. Boyer,* for defendant.