RUTH T. SURBER *vs.* DAVID EUGENE PEARCE.
RUTH T. SURBER *vs.* DAVID EUGENE PEARCE.

NOVEMBER 27, 1963.

PRESENT: Condon, C. J., Roberts, Powers and Joslin, JJ.

JOSLIN, J. These are two complaints brought under G. L. 1956, chapter 8 of title 15, as amended, entitled "Bastardy Proceedings." After a hearing before a judge of the juvenile court the respondent was on June 16, 1961 found guilty in each case and adjudged the putative father of two of the complainant's children. He was ordered to pay a sum

certain in each case for the complainant's medical expenses, to pay a sum each week for the support of each child until he or she should reach 18 years of age, and to post a surety bond in the amount of $1,000 in each case in the event of appeal. Thereafter a hearing was held before a justice of the family court on the complainant's motions to adjudge the respondent in contempt for failure to make the payments ordered and on the respondent's motions to vacate the orders of June 16, 1961 on jurisdictional and other grounds. By decrees of the family court entered in each case the motions to vacate were denied and he was adjudged in contempt and ordered to make certain payments to the complainant. From such decrees the respondent prosecutes his bills of exceptions to this court. Since the issues in each case are identical, we shall discuss the cases as though but one was before us, but our decision will apply with equal force to both cases.

We have no stenographic transcript before us of either the proceedings before the juvenile court or the family court. The factual basis for this proceeding must therefore be limited to docket entries and uncontroverted facts set forth in the pleadings or agreed to by the parties. From these it appears that complainant is a resident of Pawcatuck, Connecticut, and respondent of Westerly, Rhode Island. Neither party is married. The child is presently in the custody of a welfare agency in Connecticut. The allegation of respondent in his motion to vacate as to a lack of credible evidence to establish paternity was not urged before us and paternity therefore is not an issue. Likewise, not before us are exceptions not briefed or argued which are deemed to have been waived.

The controlling statutes are G. L. 1956, §§14-1-5C and 15-8-1, both of which are set forth in full in the appendix hereto, the italicized portion of the latter having been added thereto by P. L. 1949, chap. 2322.

The respondent argues first that the juvenile court was

without jurisdiction to enter the order of June 16, 1961 since neither complainant nor her child was at that time resident in Rhode Island. Such contention was decided by us adversely to the position urged by respondent in *Vezina* v. *Bodreau,* 86 R. I. 87, 91, where we held that by virtue of the 1949 amendment of §15-8-1 any woman within the state who is the mother of an illegitimate child or an expected illegitimate child may commence bastardy proceedings against the putative father without regard to the situs of her domicile or residence or that of her child so long as her complaint be made within the state.

The respondent contends, however, that the residence requirements of §14-1-5C were not raised in *Vezina* and were not considered by us. That section at the time of our decision granted exclusive original jurisdiction to the juvenile court to determine the paternity and provide for the support of any child alleged to have been born out of wedlock "in case such child or its mother has residence within the state." It is respondent's contention that however §15-8-1 may be interpreted, it is §14-1-5C which controls and that it limits the jurisdiction of the juvenile court to determine paternity of children born out of wedlock to instances where "such child or its mother has residence within the state." With this contention we cannot agree.

Prior to the 1949 amendment of §15-8-1 action thereunder could not be brought by a mother, but only by the director of public welfare of any town or by a person designated and appointed by the director of the state department of public welfare. It was under the statute as it existed prior to 1949 that this court in 1943 decided *Kenyon* v. *Parzych,* 69 R. I. 139, 143. There we held that the purpose of bastardy proceedings "is not punishment but to save the town from the expense incident to the birth of the child and its care and support until it reaches the age of sixteen." This was in accord with the historical view

that the purpose of a bastardy act was to secure the maintenance of illegitimate children liable to become paupers and objects of governmental support.

By the 1949 amendment, however, the legislature provided that a putative father should not escape from the consequences of his illegal act by the happenstance that the state of residence of the mother or child differs from that of the father. In so providing, the legislature recognized a duality in the purpose of statutes of this kind and that not only do they exist to alleviate demands upon the welfare rolls, but also that they have as a legitimate object the imposition of an obligation on the putative father to provide both for the lying-in expenses of the mother and for the support of the illegitimate child. *State* v. *Tetreault,* 97 N. H. 260; *Commonwealth* v. *Dornes,* 239 Mass. 592, 594; Restatement, Conflict of Laws §455, p. 545; 2 Beale, Conflict of Laws §454.1, p. 1430.

The respondent contends that §14-1-5C enacted in 1944, providing as it does that the juvenile court's jurisdiction in paternity cases is limited to instances where either the mother or child has residence in this state, is in conflict with §15-8-1 as amended in 1949. If such conflict does exist, it can in our view be reasonably resolved by application of the well-settled rule of statutory construction, "that of two irreconcilably repugnant provisions therein the one which is last in order of time is to be preferred * * *." *Opinion to the Governor,* 78 R. I. 144, 149.

In addition, the 1949 amendment of §15-8-1 provided that it should take effect upon its passage and that "all acts and parts of acts inconsistent herewith are hereby repealed." The legislative intent to which we have alluded as inducing the enactment of the 1949 amendment evidenced a purpose that the residence requirements of §14-1-5C be embraced by the repealer and those requirements were as effectively repealed by it as if they had been

specifically referred to therein. *Burdick* v. *Coates,* 22 R. I. 410, 413.

The respondent next contends that he has been deprived of his right of appeal herein by reason of the enactment of chap. 73 of P. L. 1961, the family court act. By §15-8-8 as it stood as of June 16, 1961 respondent had the right to appeal from a judgment of the juvenile court to the superior court and to claim a jury trial therein. On June 3, 1961 the legislature enacted the family court act. The relevant portions thereof in summary are: Section 1 (8-10-3) which, inter alia, gave the family court jurisdiction to hear and determine matters relative to paternity of children born out of wedlock; Sec. 9 (15-8-8) which provided that in bastardy proceedings the accused should have a right to trial by jury; Sec. 14 which provided that the words "Juvenile court" wherever in any general or public law should mean "Family court" and that reference in title 15 to the superior court should mean the family court; and Sec. 20 which provided that all the provisions of the act with which we are here concerned should take effect on September 1, 1961 and that upon the establishment of the family court all actions and proceedings pending and undetermined in the juvenile and superior courts should be heard *de novo* by the family court.

It is respondent's contention that such changes rendered appeals by him from the June 16, 1961 orders a "useless gesture"; that his appeal would have been from the judgment of a court to an appellate tribunal the jurisdiction of each of which courts prior to any hearing thereon would have been transferred to the family court; and that an appeal from an order of a court to the same court is not an effective appeal. It is no answer to his contention that his failure to claim an appeal makes the issue raised moot. This does not meet the thrust of his objection which, as we understand it, is that he failed to appeal only because

there was no appropriate forum where such an appeal could be heard.

By sec. 20 of chap. 73, his appeal if claimed would have been transferred from the superior court to the family court there to be tried *de novo*. The family court act did not deprive him of the right to a trial by jury which he would have had if his appeal had been heard by the superior court. Chap. 73, sec. 9. In the absence of constitutional or statutory provisions to the contrary, his appeal would not have been vitiated by the possibility that the judge who heard the case in the juvenile court might preside over the review proceedings in the family court. 30A Am. Jur., Judges, §187, p. 96. We refrain, however, from passing on the question not briefed or argued as to whether G. L. 1956, §8-3-5, dealing with disqualification of justices of the superior court applies to justices of the family court by virtue of sec. 14 of the family court act. In either event his day in court on appeal was assured. The respondent's contention that the enactment of the family court act deprived him of his right of an effective appeal is therefore without merit.

The respondent further argues that the juvenile court had no jurisdiction to make any award for the support of the child the custody and the obligation for the support of whom he claims had been transferred from complainant to a Connecticut welfare agency by a court of that state; that he was deprived of certain constitutional rights under sec. 1 of art. XIV of amendments to the constitution of the United States and sec. 5 of art. I of the constitution of this state because his financial condition was such that he was unable to provide surety on the recognizance required as a condition of appeal; that there was no evidence before the juvenile court as to his financial ability to make the payments ordered; and that an alleged order of the juvenile court requiring a blood test of the child was void

because of his being beyond its jurisdiction. The factual bases for such contentions in part or in whole are *dehors* the record and appear solely as statements of counsel in his brief. None of such contentions is properly before us since we do not consider questions where we are uninformed from the record as to essential facts upon which our ultimate decision may hinge. See *Severiano* v. *Diwinsky,* 58 R. I. 237, 241; *First National Stores, Inc.* v. *Lewis,* 51 R. I. 448, 450; *Ferrara* v. *Russo,* 40 R. I. 533, 536; *Iannuccilli* v. *Carlone,* R. I., 90 A. 163.

Moreover, in the absence of anything to the contrary appearing in the record, we will presume that there was competent evidence upon which the juvenile court made its findings. *Budlong* v. *District Court,* 47 R. I. 232; *Crowell* v. *Dubois,* R. I., 82 A. 264.

Finally, there is no merit in the respondent's contention that the support order entered by the juvenile court is indefinite and contains no termination date. The record shows the birth date of the child and the court's order was that a weekly sum be paid "for support of child until 18 years of age." Such an order fixed a terminal date and met the requirements of G. L. 1956, §15-8-3.

All of the respondent's exceptions are overruled, and each case is remanded to the family court for further proceedings.

## APPENDIX

"14-1-5C. To determine the paternity of any child alleged to have been born out of wedlock and to provide for the support and disposition of such child in case such child or its mother has residence within the state."

"15-8-1. Complaint and warrant for apprehension of father.—Whenever complaint in writing and under oath shall be made by the director of public welfare of any town or city in the state, that any woman who shall reside or belong in such town has been delivered of an illegitimate child, or is pregnant with a child,

which, if born alive, might be illegitimate, to any justice of the juvenile court, and naming the father of such child, or, whenever complaint in writing and under oath shall be made by the director of the state department of social welfare or by any person designated and appointed so to do by the director of the state department of social welfare, to any justice of the juvenile court that any woman within the state has been delivered of an illegitimate child, or is pregnant with child which, if born alive, might be illegitimate, and naming the father of such child, *or whenever complaint in writing and under oath shall be made by any woman within the state who has been delivered of an illegitimate child or is pregnant with child, which, if born alive, might be illegitimate, and naming the father of such child,* such justice may issue his warrant under his hand and seal, returnable forthwith, directed to each and all sheriffs, deputy sheriffs, town sergeants and constables within the state, requiring the officer charged therewith to apprehend such person named as the father of the child and have him brought with such warrant before said juvenile court relative to said complaint, to be dealt with according to law. The complainant in any such case shall not be required to enter into any recognizance for costs." (italics ours)

*Norbert Fessel,* for complainant.

*Natale L. Urso, Howard R. Haronian,* for respondent.