252 A.2d 445.

JULIETTE DESMARAIS, *p.a. vs.* THE TAFT-PEIRCE MANUFACTURING COMPANY.

ERNEST J. A. DESMARAIS *vs.* THE TAFT-PEIRCE MANUFACTURING COMPANY.

ERNEST J. A. DESMARAIS *et ux., Beneficiaries of Estate of Claudette Desmarais vs.* THE TAFT-PEIRCE MANUFACTURING COMPANY.

APRIL 25, 1969.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

ROBERTS, C. J. These are three actions of trespass on the case for negligence brought to recover damages alleged to have resulted from a collision between two motor vehicles

on West Wrentham Road in the town of Cumberland. The plaintiff Juliette Desmarais seeks to recover for personal injuries, while Ernest J. A. Desmarais, her father, seeks to recover consequential damages. A third action was brought by the estate of Claudette Desmarais pursuant to the wrongful death act. In the superior court the cases were tried together to a justice thereof sitting with a jury, and in each case a verdict was returned for the defendant. Thereafter the plaintiff's motion for a new trial in each case was denied, and the plaintiffs now prosecute their appeals to this court from certain evidentiary rulings of the trial justice. The defendant is also prosecuting a cross appeal from the denial of its motion in the superior court to dismiss the appeals of the plaintiffs.

The collision occurred about 9 a.m. on the morning of June 3, 1958, plaintiff Juliette being the operator of the motor vehicle owned by her father, Ernest, and her sister Claudette riding therein. The defendant's automobile was being operated by Frederick Blackall with his wife Hazel a passenger in the car. As a result of the collision Hazel Blackall and Claudette Desmarais died, while Juliette Desmarais and Frederick Blackall received substantial injuries.

The evidence adduced to establish the circumstances in which the collision occurred is in conflict and is perhaps somewhat confused. However, because of the precise character of the issue raised by plaintiffs' appeals, it will not be necessary to go into that particular phase of the evidence in any substantial measure. The plaintiffs' appeals rest primarily upon their contention that it was error to permit witnesses to testify, pursuant to G. L. 1956, §9-19-11, as to statements made at the time of the accident by the deceased, Hazel Blackall, and other statements made by Frederick Blackall prior to his death in 1963 in an airplane accident.

This testimony was objected to as hearsay and admitted

over objection. The defendant offered some such testimony through Frederick Steel Blackall III, a son of the operator of its vehicle. He testified that he had first discussed the accident with his father in the hospital on the day it happened and on other occasions within a few weeks after the accident. He testified over objection that his father had said that "* * * it was a very pleasant day and that he and my mother were driving down West Wrentham Road together and he spoke of the car coming in the opposite direction and spoke of it turning very sharply into him, that is, across the road and into him."

He testified further that his father had told him that he was traveling at a moderate rate of speed and said: "The thing that I remember vividly relates to the car turning sharply into his path. Beyond that point, in terms of specifics, it's very difficult to judge. There is one other thing that I recall and I recall it with some horror, only for reliving the experience, but he spoke of my mother's scream as this car turned across the path and into them, a scream of merely 'Look out Fred,' which I particularly recall. Beyond that, I think it would be difficult for me to separate out the various conversations."

Similar evidence was adduced through a daughter-in-law of defendant's operator, Patricia H. Blackall, who testified that in the hospital Mr. Blackall had told her: " 'My God, the car turned into me' and I can't remember exactly anything more about that, but just the idea that he was going down and the car turned right into him and he put on his brakes, and, and I can't tell you any, I can't remember word for word at all."

Three other witnesses, including a son-in-law of Frederick Blackall, an investigator from the registry of motor vehicles, and a Cumberland policeman, all testified as to statements that were made to them by Mr. Blackall. The substance of these statements was that Blackall was oper-

ating defendant's car on West Wrentham Road about 30 to 35 miles an hour, that he was on the right-hand side, and that he suddenly observed a car coming toward him which, as it approached, swerved toward him at a 45-degree angle, and the collision took place.

The plaintiffs urge, first, that the trial justice erred in allowing this testimony into evidence pursuant to the statute in that he in no manner made a preliminary finding that the statements of the deceased were made in compliance with the statutory provisions which they contend are conditions precedent. On its face the statute requires that testimony — despite its character as hearsay, admitted pursuant to its provisions — have been made prior to the commencement of the action, in good faith, and upon the personal knowledge of he who made the statement.[1] The record discloses, and it is not disputed, that the trial justice did, with respect to all of this evidence, determine that it was made prior to the commencement of the action. The record discloses also that no specific reference was made to the statute, either by the court or by counsel, and that counsel for plaintiffs, while objecting to the admission of this evidence as hearsay, made no request for a preliminary finding of compliance with the provisions of the statute.

The question then with which we are concerned is whether the admission of this evidence without the making of express findings by the court as to the good faith and personal knowledge of the declarant constituted prejudicial error. While this question has been raised on prior occasions in this court, we have as yet given no direct answer thereto. In *DeFusco* v. *Laudati*, 64 R. I. 68, 10 A.2d 346, a jury trial was involved, and when evidence of the state-

---

[1]Section 9-19-11 reads: "A declaration of a deceased person shall not be inadmissible in evidence as hearsay if the court finds that it was made in good faith before the commencement of the action and upon the personal knowledge of the declarant."

ments of a deceased person was offered, the court admitted it without requiring the laying of a foundation to show compliance with the requirements of the statute under which such statements, ordinarily hearsay, may be admitted into evidence. This court, without answering the question, held that because the substance of the conversation to which the statements of the deceased person referred was later admitted into evidence without objection, there could be no prejudicial error. In *Segee* v. *Cowan,* 66 R. I. 445, 20 A.2d 270, statements of a deceased person were offered for admission into evidence during a trial by jury, and the court, before allowing the witness to testify, read the statute aloud and then overruled the defendant's objection to the admission thereof. There this court found that in the circumstances the trial justice by clear implication found that the requirements of the statute had been complied with and he did not err in admitting them into evidence.

We again considered the question of the necessity for a formal finding of compliance with the terms of the statute before the admission of statements of deceased persons thereunder in *Waldman* v. *Shipyard Marina, Inc.,* 102 R. I. 366, 230 A.2d 841. There the issues were tried to a justice of the superior court sitting without a jury, and we held that the language of *DeFusco* v. *Laudati, supra,* implying that a foundation must be laid for the admission of such evidence, should not be applied strictly where a jury trial was not involved. We did, however, in that case say: "In jury trials it is not unreasonable to require a more formal compliance with the provisions of the statute, including a prior establishment of such compliance, in order to preclude the possibility that inadmissible evidence would get to the jury and result in prejudice even though later stricken." We went on to note, however, our disagreement with the contention that the reference to the laying of a foundation

444

stated in the *DeFusco* case was intended to require the establishment of compliance with the terms of the statute in a formal procedure before admitting such testimony. It was our opinion that such an interpretation would unduly limit the effectiveness of the statute and defeat the legislative purpose to admit under these circumstances, despite their hearsay character, the statements of deceased persons. It is, in our opinion, clear from all three cases that the court was seeking to avoid the imposition upon a trial justice of a requirement that he formalize his consideration of the proffered testimony for the purpose of determining compliance with the terms of the statute providing for its admission into evidence.

The language we used in *Waldman* suggests that a rule of reason be applied in these cases and that the extent to which we will require express findings of compliance with the provisions of the statute by the trial court be dependent upon the circumstances in which the evidence was offered and the nature of the case being heard. We are unwilling to require the trial court to observe ritualistic procedures to determine compliance with the statutory provision admitting such evidence. It should be sufficient, in our opinion, if the action of the trial court suffices, to reasonably ascertain whether the statements were made prior to the institution of the action, in good faith, and within the knowledge of the declarant. Where the circumstances surrounding the making of the statements sought to be admitted are susceptible of reasonable inferences that it was prior to the institution of the action, was in good faith, and was within the personal knowledge of the declarant, the trial court may rely upon such inferences and may, on that basis, admit such evidence without expressly finding compliance with each specific provision of the statute.

In the instant case it is conceded that the court expressly determined the time element in order to reasonably estab-

lish that the statements were made prior to the institution of the action. The record discloses that the statements were made by Mr. Blackall while in the hospital a short time after the collision, and in the absence of any contention by plaintiffs that the statements were not made in good faith, a formal finding to that effect is unnecessary. We are persuaded that in those circumstances the good faith of the declarant may well be presumed. There is no question that, in the circumstances, the statements made by Mr. Blackall were made from his personal knowledge, he having been the operator of defendant's car and a participant in the events that led up to the collision. In all the circumstances of this case, we conclude that the trial justice did not err in admitting the statements of the deceased persons into evidence without expressly finding compliance with the terms of the statute.

The plaintiffs further urge as prejudicial and reversible error the court's admission into evidence under the statute of a portion of the testimony of the younger Mr. Blackall concerning statements he attributed to his father. The son testified that his father had told him that just prior to the occurrence of the collision his wife Hazel had said, " 'Look out Fred.' " The plaintiffs urge that the testimony of the younger Mr. Blackall as to what his deceased father said his deceased mother had stated is hearsay on hearsay and is not admissible under this statute. In *Williams* v. *Rhode Island Hospital Trust Co.,* 88 R. I. 23, 143 A.2d 324, we held that the statute under consideration does not authorize the admission into evidence of "hearsay on hearsay."

There we relied on *Dow* v. *Dow,* 243 Mass. 587, 137 N. E. 746, wherein the court stated that the declarations of one deceased person to another person now deceased are not admissible under this type of statute because "The declaration was not of a fact within the personal knowledge of

the declarant, but was merely hearsay." In brief, the younger Mr. Blackall, according to plaintiffs, was allowed to testify as to what his deceased father had told him concerning a statement made to his deceased father by his deceased mother just prior to the collision and which was not a fact within the personal knowledge of the older Mr. Blackall. It is obvious that if such were the case, the deceased Mr. Blackall did not, as a declarant, have personal knowledge of the matter to which he testified but was merely stating something that his wife had told him.

We are unable to agree with this contention. It is our opinion that the older Mr. Blackall's telling his son the contents of his wife's statement made just before the impact was a disclosure of a fact, a part of the transaction, that is, part of the res gestae and, therefore, was a fact concerning the collision that was known to the older Mr. Blackall and to which he could have testified were he alive. We agree that the exclamation by Mrs. Blackall to her husband immediately prior to the impact was res gestae of the accident and, therefore, not objectionable as hearsay.

In *Canham* v. *Rhode Island Co.*, 35 R. I. 177, 182, 85 A. 1050, 1052, we defined res gestae as follows: " 'Res gestae are events speaking for themselves, through the instinctive words and acts of participants, not the words and acts of participants when narrating the events. What is done or said by participants, under the immediate spur of a transaction, becomes thus part of the transaction, because it is then the transaction that thus speaks. In such cases it is not necessary to examine as witnesses the persons who, as participators in the transaction, thus instinctively, spoke or acted. What they did or said is not hearsay; it is part of the transaction itself.' "

We are persuaded after consideration that the exclamation of Mrs. Blackall just prior to the accident was part of the res gestae and was a statement the content of which

could have been described by Mr. Blackall had he been alive and testifying at the trial himself. We have held that the guiding principle to the admission of the statement of a deceased person is precisely whether that deceased person, if present as a witness, would have been permitted to make the statements that are now offered in evidence. *Caswell v. Bathrick*, 53 R. I. 114, 164 A. 505. Consequently, we hold that it was not error for the trial justice to admit into evidence the testimony of the younger Mr. Blackall concerning his father's statement as to what his mother had said at that time.

Because we take the view that the appeals of the plaintiffs must be denied and dismissed, it would serve no useful purpose to consider the appeal of the defendant.

The appeals of the plaintiffs are denied and dismissed, the appeal of the defendant is dismissed pro forma, and the judgment in each case is affirmed.

*Lavine & Sutherland, Omer A. Sutherland, Lewis Z. Lavine, Howard S. Portney,* for plaintiffs.

*Keenan, Rice & Dolan, John T. Keenan,* for defendant.