267 A.2d 420.

BERTHA K. HEUSER *vs.* JOSEPH M. GOLDSTEIN *et al.*

JUNE 29, 1970.

PRESENT: Roberts, C. J., Paolino, Powers and Joslin, JJ.

JOSLIN, J. This is a civil action in which the plaintiff seeks to recover for damages suffered on February 9, 1965

when the automobile in which she was riding as a passenger was involved in a collision with a motor vehicle owned by one defendant and operated by the other. A Superior Court jury returned a verdict for $7,500 plus interest against each defendant. Both defendants appealed.

Any reference to how the collision occurred would be superfluous for on the view the parties take of the case the issue centers on damages, rather than on liability, and specifically on whether the jury were influenced by irrelevant matters which tended to arouse their sympathies for plaintiff.

The evidence which gives rise to this issue was introduced at the very outset of plaintiff's direct examination when in response to her counsel's question she was allowed to testify over objection that she became a widow about four months prior to the accident and that living with her at the time of the accident was a "very thin and underweight" daughter who did not "work too much." The defendants argue that this evidence was extraneous to the merits and should have been excluded under the rule which, in an action for the recovery of damages for personal injuries not resulting in death, bars the admission of facts relating to the injured party's family or domestic circumstances.[1]

---

[1]What kind of evidence is objectionable is illustrated in *Gause* v. *Livingston*, 251 S.C. 8, 159 S.E.2d 604 (testimony that plaintiff, a minor, was one of six children, had a blind father, and relied on her mother for support); *Ulrich* v. *Minneapolis Boxing and Wrestling Club, Inc.*, 268 Minn. 328, 129 N.W.2d 288 (plaintiff was sole support of his wife who was confined to an asylum); *Maggio* v. *City of Cleveland*, 151 Ohio St. 136, 84 N.E.2d 912 (plaintiff's husband was mentally ill, unable to work, and depended upon her for support); *Guenther* v. *Jackson*, 73 Ind. App. 162, 126 N.E. 873 (that plaintiff's nine-year-old daughter had been invalided and entirely helpless since she was three months old); *Dudek* v. *Janesko*, 120 N.J.L. 214, 199 A. 26 (that plaintiff had nine children). See also Annot., 59 A.L.R.2d 371 for a general review of cases concerning the prejudicial effect of evidence relating to family circumstances.

While there is ample support for the rule which defendants invoke, it is not always rigidly applied, and a trial justice is given latitude to permit the introduction of evidence, notwithstanding its relation to a plaintiff's domestic situation, if it otherwise serves a legitimate purpose. *Tropea* v. *Shell Oil Co.*, 307 F.2d 757, 769-70; *Lebrecht* v. *Bethlehem Steel Corp.*, 402 F.2d 585; *King* v. *Holt*, 200 Pa. Super. 431, 188 A.2d 760. In this case the fact that plaintiff at the time of the accident was recently widowed,[2]

---

[2]The transcript in this respect and as well as with regard to plaintiff's widowhood shows the following:

"Q. What, have you a family Mrs. Heuser?

"A. Yes sir.

"Q. Are you married?

"A. Yes sir.

"Q. Were you married at the time of the accident?

"A. Yes sir, I was a widow.

"Q. Are you a widow now?

"A. Yes sir.

"Q. At the time of the accident, which was February 1965, was there anybody at home with you?

"A. Well one daughter.

"Q. Was she ill?

"Mr. Borden:    I object Your Honor.

"The Court:    What?

"Mr. Borden:    I object, it's not relevant.

"The Court:    As to the relevancy?

"Mr. Borden:    Yes.

"The Court:    The objection is overruled.

"Mr. Maguire:    You may answer.

"The Witness:    Well one daughter, but she was very thin and underweight so she doesn't work too much.

"The Court:    What is the answer?

"Q. She worked irregularly?

"A. She don't work too much.

"Q. When did your husband die, do you remember?

"Mr. Borden:    Objection Your Honor.

"The Court:    I will allow this.

"The Witness:    The accident happened in February, I lost him in October just a short while later in October.

"The Court:    October '64?"

although objectionable as evidence bearing upon her family relationships, may nonetheless have been relevant as explanatory of why she, rather than her husband,[3] was seeking reimbursement for the medical and dental expenses incurred in effecting a cure of the injuries she sustained. While our determination of another facet of this case permits us to assume that the fact of her widowhood was relevant because it was essential to the establishment of her claim, it does not necessarily follow that we also approve the method she used to inform the trial court why she was suing in her own name, rather than her husband's, for reimbursement of those expenses.

Even more troublesome than the evidence that plaintiff's husband had deceased only four months prior to the accident was her testimony that her daughter was then thin, underweight, and unable to work too much. The plaintiff attempts to justify the legitimacy of that testimony and to cloak it with relevance by arguing that it, just like her widowhood, was an inseparable part of otherwise competent evidence, and that it was adduced, not to evoke sympathy, but to demonstrate a working mother's "heroic and dogged efforts" to discharge her responsibilities to an ailing child; to explain why, despite her pain and suffering, she had not missed a day of work as a consequence of her injuries; and to forestall defendants from pointing to her continued employment in an attempt to minimize her claim of pain and suffering.

That argument presupposes a factual frame of reference of injuries so serious and pain and suffering so severe that plaintiff would have terminated her employment if it were

---

[3]The husband is ordinarily bound to pay for the medical services rendered his wife, and he, not she, has the claim against the wrongdoer for such services in a suit for consequential damages. *Barker* v. *Rhode Island Co.*, 35 R. I. 406, 87 A. 174. See also *Brickle* v. *Quinn,* 65 R. I. 418, 14 A.2d 817; *Martin* v. *United Electric Rys.,* 71 R. I. 137, 42 A.2d 897.

not for her responsibility as a parent to provide for a daughter whose physical condition made her unable to provide for herself. But the record does not support her claims.

This does not mean that she was not injured or that she could work without pain for it is clear that she was injured and that she did suffer. Her injuries included minor oral damage which necessitated the taking of x-rays, the replacement of a partial upper denture, and the rececementing of a cap. The dental charge for that work was $186. In addition, there was a painful injury to her left posterior cervical muscles and a complaint of pain in her upper abdominal muscles. The attending physician treated her for these ailments thirty-eight times over a period of three years. The treatments consisted of injections of vitamin B-12 and administration of heat to the neck area in the form of microthermy. The charges for these services were $190. It is also true that at the time of the trial plaintiff still had residual tenderness in the left cervical muscles and still had aches and pains. There is nothing in the record, however, which establishes that she would have left her employment because of those injuries and that pain and suffering were it not for her responsibility to provide for her daughter. Without that kind of evidentiary basis, her attempt to give relevancy to the evidence about her daughter fails, and it should have been excluded under the rule which in personal injury actions excludes evidence of a plaintiff's exigencies.

There remains the question of whether the evidence had a prejudicial effect, and that, of course, turns on whether it reasonably tended to exert an influence upon the determination of the real issue in the case. *Nugent* v. *City of East Providence,* 103 R. I. 518, 238 A.2d 758; *Abilheira* v. *Faria,* 102 R. I. 214, 229 A.2d 758; *New England Box & Barrel Co.* v. *Travelers Fire Ins. Co.,* 63 R. I. 315, 8 A.2d

■ No rule of thumb will provide us with the answer, and there is no bench mark against which possible prejudicial effect may be measured. Instead, prejudicial effect, if it exists, must be found in an examination of the substance of the evidence and of the facts attendant upon its admission, and in an evaluation of its probable effect upon the outcome of the case.

Among the factors in the family-circumstance line of cases which courts elsewhere have said merit consideration in the examination and evaluation process are the questions of whether the evidence was introduced by the plaintiff or by the defendant, *St. Louis-San Francisco Ry.* v. *King,* (Okla.) 278 P.2d 845; whether it came in inadvertently as an unelicited statement or whether it was an apparently intentionally provoked response, *Larson* v. *Alton and Southern R.R.,* (Mo. App.) 431 S.W.2d 687; *Southern Pacific Co.* v. *Ralston,* 67 F.2d 958; *Chicago & N.W. Ry.* v. *Kelly,* 74 F.2d 31; whether the inquiry was preliminary or incidental or whether it was seemingly directed to the witness in anticipation that the response would create a feeling of sympathy in the minds of the jurors, *Eoff* v. *Spokane, Portland and Seattle Ry.,* 70 Wash. 270, 126 P. 533; *Tropea* v. *Shell Oil Co., supra;* and whether the award of damages was excessive or large or whether it was truly responsive to the injuries proven. *Ulrich* v. *Minneapolis Boxing and Wrestling Club, Inc.,* 268 Minn. 328, 129 N.W.2d 288; *Daniels* v. *Banning,* (Mo.) 329 S.W.2d 647.

In this case the evidence was adduced during direct examination when plaintiff, after having testified that she was a widow and that she had a daughter living at home with her at the time of the accident, was pointedly asked by her counsel "Was she ill?" Her reply was, "Well one daughter, but she was very thin and underweight so she doesn't work too much." It hardly seems possible that her response was unanticipated; that it was inadvertent

rather than elicited; that it was not intended to provide something other than incidental background; or that it was designed solely to furnish a possible explanation for her continued employment. Instead, in our view, it was probably asked for the purpose of enhancing the damages. And even if that were not its prime purpose, can it be doubted that it could hardly fail to have the effect of evoking a sympathy which thereafter influenced the jury in plaintiff's behalf?

The jury's award was $7,500, of which $376 was for reimbursement of out-of-pocket medical and dental expenditures, and the balance of $7,124 was compensation for pain and suffering. While the trial justice believed that the jury were perhaps more liberal in assessing damages than he would have been, he did not interfere with the verdicts which in his judgment were not so unreasonable or so outrageous as to shock the conscience.[4] He did comment, however, that in their argument for a new trial defendants had not satisfied him that the jury were sympathetic toward plaintiff *solely* because of her testimony that her husband had passed away a few months prior to the accident. That observation for our purposes stands on the same footing as if it had also included a reference to the evidence about the thin, underweight daughter who could not work too much. Clearly, the trial justice's conclusion that the jury were not sympathetic to plaintiff *solely* because of her family circumstances implied his belief that the evidence concerning those circumstances may have had an effect

---

[4]This was the reason the trial justice gave for refusing to disturb the verdict on the grounds of excessiveness. In effect he was applying the rule which says that a verdict in a personal injury case is excessive only if there is a demonstrable disparity between the award and the pain and suffering shown to have been endured as a consequence of the injuries sustained. *Fusaro* v. *Naccarato*, 103 R. I. 324. 237 A.2d 545; *Calci* v. *Brown*, 95 R. I. 216, 186 A.2d 234; *Tilley* v. *Mather*, 84 R. I. 499, 124 A.2d 872.

upon the jury, and that they may have been improperly motivated in their assessment of damages.[5]  Indeed, plaintiff herself recognizes that her widowhood and her daughter's illness may have had that effect for she says in her brief "* * * that such facts may have entered into the jury's verdict is not plaintiff's fault."

We share the trial justice's feeling that the jury's award was liberal, and we share also his reservation that the jury's sympathy for plaintiff might have precipitated that liberality.  That feeling and reservation together with the other circumstances attendant upon the presentation of the objectionable evidence, satisfy us that defendants were prejudiced by its admission.  We regret that we must disturb the verdicts, but the possibility that the improper evidence had a controlling influence on the jury's computation of damages leaves us with no alternative.  *Marley* v. *Providence Journal Co.,* 86 R. I. 229, 134 A.2d 180; *Ames & Payne* v. *Potter,* 7 R. I. 265.

Because it would be sheer speculation for us to say to what extent the objectionable evidence enhanced the jury's award, we believe the ends of justice will be best served if a jury uninfluenced by improper considerations pass on the extent of the plaintiff's injuries.  *Silver King of Arizona Mining Co.* v. *Kendall,* 23 Ariz. 39, 201 P. 102; *Hudock* v. *Youngstown Municipal Ry.,* 164 Ohio St. 493, 132

---

[5]What was said here bears a striking resemblance to what was said in *DelVecchio* v. *O'Leary,* 97 R. I. 329, 197 A.2d 759. There the trial justice, after expressing himself in similar vein about the jury's liberality, went on to say, " 'It may be that the Jury did find as it did on account of trial counsel's conduct during the course of the trial in behalf of the defendant, but this Court cannot clearly state that the Jury's verdict was due *solely* to the conduct of the trial counsel in behalf of the defendant during the course of this trial.' " (Emphasis added.)  The only inference possible from that reference, we said, was that the trial justice believed that the jury had been at least partially motivated by counsel's conduct. *Id.* at 334-35, 197 A.2d at 761-62.

N.E.2d 108. See also *Lornitzo* v. *Rhode Island Hospital,* 79 R. I. 455, 89 A.2d 831.

The case is remitted to the Superior Court with direction to grant a new trial on the question of damages.

KELLEHER, J., did not participate.

*Francis J. Maguire,* for plaintiff.

*Higgins, Cavanagh & Cooney, Kenneth P. Borden,* for defendants.