306 A.2d 41.

JUDITH M. GRELLE, JOHN GRELLE, DONNA GRELLE, *p.p.a. vs.* FRANK J. CALISE, *Administrator of the Estate of Maria A. Calise.*

JUNE 12, 1973.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. This civil action was brought in the Superior Court by Judith M. Grelle and her minor daughter, Donna, who sued by her father and next friend, John Grelle, to recover for personal injuries sustained as the result of Maria A. Calise's alleged negligence. The father also sued in his own name for consequential damages. Prior to trial, Maria A. Calise, the defendant, died and her husband, Frank, who had been appointed administrator of her estate, was substituted as the party defendant. The case was tried to a jury which returned verdicts for the defendant. Following the denial of their motion for a new trial, the plaintiffs appealed from the judgments which had in due course been entered for the defendant.

On the view we take of the case, no more than a brief reference to the facts is required. Mrs. Calise testified in depositions taken prior to her death that on the afternoon of December 7, 1965, she was driving her automobile at about 10 to 15 miles per hour in a northerly direction on Ingleside Avenue in the city of Cranston, when she heard a noise which seemed to her to have originated from outside the left rear of her automobile. She stopped, and after

looking about observed the plaintiff, Judith M. Grelle, lying in the highway a short distance from the westerly curb.

As a result of the injuries she had sustained, Mrs. Grelle apparently suffered from a loss of memory, and while she was able to recall that she had been pushing her daughter in a stroller in a southerly direction on the westerly side of Ingleside Avenue, just prior to whatever it was that occurred, she had no recollection whatsoever about when or how the accident happened. Hence, her testimony was of little or no assistance.

It was otherwise, however, with respect to the testimony of Mrs. Hanley who resided on the opposite side of Ingleside Avenue from where Mrs. Grelle was found. She was talking on the telephone and, as chance would have it, looking out of a window in her home just as the automobile driven by defendant's intestate was proceeding along Ingleside Avenue. She testified that she saw it suddenly veer to the left toward the westerly side of Ingleside Avenue, and that within seconds thereafter she heard a terrible scream. She thereupon abruptly terminated her phone conversation and ran out of her house to ascertain what had happened. She saw Mrs. Grelle lying in the street with her head a short distance from the curb, the stroller a short distance away with its rear wheels on the grassy strip along the side of the curbstone and its front wheels in the gutter, and Mrs. Calise's vehicle stopped at a point less than 12 feet from the westerly curb and about 4 feet beyond Mrs. Grelle's prostrate body.

With the evidence thus in conflict there was, of course, a question for the jury. Should it believe Mrs. Calise who in her depositions testified that she was driving on her own side of the road, that she did not swerve to the left until after she heard the noise coming from the left rear of her automobile, and that she did not strike Mrs. Grelle or the stroller; or should it accept Mrs. Hanley's testimony and

infer therefrom that Mrs. Calise's vehicle swerved and struck Mrs. Grelle and the stroller?

The defendant knew that the issue was credibility, and he realized that the verdicts would probably be for plaintiffs if the jury accepted Mrs. Hanley's version of the events in preference to his wife's. Accordingly, in what he frankly admits was an attempt to convince the jury that his wife's testimony should be believed, he testified at length, over objection,[1] that at the time his wife deposed she knew that she was suffering from and being treated for Hodgkins' disease, and that her ailment was terminal. Indeed, death came to her about five weeks after the taking of her depositions.

Defendant argues that his wife, being fully cognizant of her condition and impending death, was hardly likely to tamper with the truth, and that the evidence showing that knowledge was therefore relevant in assisting the jury to arrive at a proper evaluation of her testimony. But that argument ignores the fact that the evidence was proffered solely for the purpose of establishing the truthfulness of his wife's testimony, and that it was therefore in violation of the rule which generally prohibits evidence of that kind when, as in this case, it has not been preceded by an assault upon the witness' character by the other side.[2] *Homan* v.

---

[1] The plaintiffs did not follow the letter of Super. R. Civ. P. 46 and specifically request or obtain the trial justice's consent to the entry of a single objection to this entire line of questioning. The record fairly viewed, however, is reasonably susceptible to the conclusion that the trial justice, in effect, stated that specific objection did not have to be made to each question in the line, and defendant's failure to argue plaintiffs' noncompliance with Rule 46 lends weight to the view we take of the record.

[2] The defendant argues that the jury would have been apprised concerning Mrs. Calise's knowledge or belief that she was dying if her testimony had been offered as a dying declaration, and he fails to see why such evidence, if permitted in that situation, should not be allowed in this. The short answer to that contention is that a dying declaration, under

*United States,* 279 F.2d 767, 772-73 (8th Cir. 1960); *Bryant v. State,* 233 Ind. 274, 280-81, 118 N.E.2d 894, 897 (1954).

Wigmore's rationale for this rule is that a witness' or a party's character for truth-telling may be assumed to exist, and that valuable trial time should not be spent in an attempt to bolster what is assumed at least "until *his character is brought in question* and it thus becomes worthwhile to deny that his character is bad." 4 Wigmore, *Evidence* §1104 at 233-34 (Chadbourn rev.ed. 1972); *accord,* McCormick, *Evidence* §49 at 102-03 (2d ed. 1972).

In this case the wife's character was not brought into question, and it was therefore error to permit evidence of her consciousness of her physical condition and impending death, when its only purpose was to support her character for truth-telling.

Whether that evidence, though improperly admitted, had a prejudicial effect is another question which we determine, not by testing with a legal litmus or by utilizing a bench mark, but by examining its substance and the facts attendant upon its admission, and then by evaluating whether it tended to increase the probable strength of Mrs. Calise's testimony in the minds of the jurors and thereby influence their decision with respect to whether she was telling the truth. *Heuser v. Goldstein,* 107 R. I. 317, 321-22, 267 A.2d 420, 422 (1970). If it had that effect, then it was prejudicial.

Here the evidence was intentionally solicited by defendant's counsel who in argument to us stated that he propounded the questions with respect to the wife's awareness anticipating that the responses would convince the jurors

---

G. L. 1956 (1969 Reenactment) §9-19-11, to be admissible, must be made *ante litem motam,* that is, prior to the commencement of the litigation. *Desmarais v. Taft-Pierce Mfg. Co.,* 105 R. I. 438, 252 A.2d 445 (1969). And here, of course, the depositions were taken long after the litigation was commenced.

that "* * * this lady would not go to her Maker with a lie on her lips."

While we are not privy to what went on in the jury room, and are therefore unable to ascertain with certainty the effect of that evidence upon the jurors' deliberations and conclusions, it nonetheless seems to us that we are justified in assuming that the evidence achieved its announced and intended purpose of influencing the jury to accept Mrs. Calise's testimony rather than Mrs. Hanley's. That being so, there is reversible error which is dispositive of the case.

The plaintiffs' appeal is sustained, the judgments appealed from are reversed, and the case is remitted to the Superior Court for further proceedings.

Motion to reargue denied.

Mr. Justice Powers participated in the decision but retired prior to its announcement. Mr. Justice Doris did not participate.

*Dominic Cresto, Matthew Ward, John F. McDonough,* of counsel, for plaintiffs.

*Martin M. Zucker,* for defendant.