403 A.2d 1080.

JOHN MORGAN *et ux. vs.* PAUL DIBIASE

JULY 11, 1979.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

828

JOSLIN, J.  This civil action for negligence arises out of a collision between a motor vehicle owned and operated by the plaintiff, John Morgan, in which his wife, Cheryl, also a plaintiff, was a passenger, and one driven by the defendant, Paul DiBiase. DiBiase filed a counterclaim alleging that John Morgan was negligent. The case was tried in the Superior Court where a jury returned verdicts of $14,500 and $6,695, respectively, for John and Cheryl Morgan and $3,225 for DiBiase on his counterclaim. In response to interrogatories, the jury also found that each operator was equally responsible for the collision. Accordingly, the judgments that thereafter were entered in favor of John Morgan and the defendant were diminished in the proportions attributable to their negligence. The defendant appealed and assigns as errors an evidentiary ruling and the trial justice's denial of the defendant's motions (1) to pass the case because of an allegedly improper remark made by the plaintiffs' attorney in argument to the jury, and (2) for a new trial.

About midnight on December 12, 1971, plaintiffs were proceeding west on Scituate Avenue in Cranston and defendant was proceeding south on Pippin Orchard Road in the same city. Their vehicles collided at the intersection of the two streets, and caused both personal injuries to the occupants and property damage to the vehicles. Whether there was a stop sign at the interesection, whether defendant had stopped before entering that intersection, and whether a police report of the accident was accurate were all matters in dispute at the trial.

The defendant's first argument on appeal is that the trial justice erred in admitting affidavits from Cheryl's physician

and from the business manager of a local hospital. These affidavits were offered to support Cheryl's claim that about 2 months after the accident, she was hospitalized because of vaginal bleeding and that about a month thereafter, she sustained a miscarriage as a result of the automobile collision. The affidavits include information concerning Cheryl's health, the medical services rendered, and the charges therefor.

At the Superior Court trial defendant objected generally to the admission of the physician's affidavit and specifically to the admission of the hospital affidavit, asserting that "there's no foundation for it." On appeal, he alters his grounds and contends that both affidavits were inadmissible because they were irrelevant.[1]

In support of this assertion, defendant argues that the only evidence linking Cheryl's miscarriage to the collision is the statement in the physician's affidavit[2] that "[w]hether or not this patient's alleged accident was instrumental in her miscarriage is uncertain. However, if Mrs. Morgan suffered any anoxia (unconsciousness) at the time of the accident (as she claims), this may well have been a precipitating factor in the miscarriage."

Conceding that this statement ties the miscarriage to the collision, defendant nevertheless contends that it is irrelevant because the doctor's statement is so lacking in positiveness that the jury, in deciding whether such a causal relationship existed, was forced to resort to speculation and conjecture. A conclusion so premised, he continues, is impermissible.

---

[1] He also contends that they were inadmissible because G.L. 1956 (1969 Reenactment) §9-19-27, as amended by P.L. 1971, ch. 131, §1, pursuant to which they were proffered, is unconstitutional. That section authorizes admission into evidence of medical and hospital records, supported by affidavits, in certain circumstances. Of course, the subject matter of the records must be otherwise admissible. In the view we take of the case, however, we do not reach the constitutional issue.

[2] Although defendant's claim of error applies to both affidavits, the hospital's affidavit contains only a statement of charges and a medical record. It contains nothing that could furnish a nexus between the miscarriage and the collision.

In substance, defendant invokes our settled rule that expert evidence offered to establish a causal relationship between an incident and a subsequent injury should be admitted only if it speaks in terms of "probabilities" rather than "possibilities." *Evans* v. *Liguori*, 118 R.I. 389, 398, 374 A.2d 774, 778 (1977); *Sweet* v. *Hemingway Transport, Inc.*, 114 R.I. 348, 355, 333 A.2d 411, 415 (1975). We explained in *Sweet* that

> "[e]xpert testimony, if it is to have any evidentiary value, must state with some degree of positiveness that a given state of affairs is the result of a given cause. Absolute certainty, of course, is not required. In those cases where expert testimony is relied on to show that out of several potential causes a given result came from one specific cause the expert must report that the result in question *'most probably'* came from the cause alleged." *Id.*

Certainly the physician's observation that the link between the collision and the miscarriage was "uncertain," even when bolstered by his further observation that the collision, if it rendered Cheryl unconscious, "may well have been a precipitating factor," falls far short of the requisite positiveness and was therefore inadmissible. At the trial, however, defendant objected only generally to the introduction of this evidence. The difficulty he now faces is that a ruling admitting evidence over a general objection may not ordinarily be challenged on appeal if the evidence objected to is admissible on any ground whatsoever. 1 Kent, *R.I. Civ. Prac.* §46.2 at 356 (1969); *see* 1 Wigmore, *Evidence* §18 at 336-38 (3d ed. 1940).

The plaintiffs, however, have not suggested, nor have we been able to find, any tenable ground supporting the admission of an affidavit that was not relevant to any issue in the case except Cheryl's claim that she suffered a miscarriage as a result of the collision. But for reasons already commented upon, the affidavit was inadmissible for the purpose. That it was erroneously admitted, however, does not call for reversal unless the document was prejudicial, and it will be deemed

prejudicial only if it reasonably tended to exert an influence upon the determination of the material issues in the case. *Grelle* v. *Calise*, 111 R.I. 612, 616, 306 A.2d 41, 44 (1973); *Heuser* v. *Goldstein*, 107 R.I. 317, 321, 267 A.2d 420, 422 (1970).

That the affidavit did influence the jury in determining John's damages is abundantly evident. The verdict in his favor was $14,500 and the jury, in response to interrogatories, stated that $7,500 was for pain and suffering and permanent injuries, and the balance of $7,000 was for reimbursement of out-of-pocket expenses. An analysis of those out-of-pocket expenses discloses that $240 of that balance was attributable to medical expenses resulting from Cheryl's miscarriage.[3]

Moreover, although we are not privy to the jury's deliberations, it would be totally unreasonable for us to conclude that the jury that reimbursed John for the expenses he incurred in connection with Cheryl's miscarriage did not also include something in its award to Cheryl for the pain and suffering she endured in miscarrying.[4]

---

[3]The jury awarded John Morgan 7,000 for "medical bills, hospital bill, doctors' bills, loss of wages and property damage." The record discloses that the specific amounts claimed by John for those items were as follows:

| | |
|---|---|
| $1,577.71 | — medical bills for John Morgan. |
| 179.55 | — medical bills for Cheryl Morgan at time of accident and unrelated to her miscarriage. |
| 240.00 | — medical bills for Cheryl related to the miscarriage. |
| 1,500.00 | — property damage to motor vehicle. |
| 3,500.00 | — lost wages of John Morgan (estimated at $3,500 to $4,000). |
| $6,997.26 | TOTAL |

It seems reasonably clear that the jury in fixing the sum of $7,000 was merely rounding off the total out-of-pocket expenses.

[4]The jury, in response to an interrogatory with respect to the damages suffered by Cheryl, broke down the $6,695 verdict in her favor as consisting of $445 for loss of wages and $6,250 for pain and suffering and injuries.

We have, then, a situation in which inadmissible evidence crept into the case. We must now decide whether that evidence so inflamed the passions and prejudices of the jury and so aroused its sympathy that it was prevented from deciding the liability issue fairly, or whether that evidence affected only its assessment of damages. If the former, defendant is entitled to an unconditional new trial. But if the evidence had the more limited effect, the error may be corrected by granting a new trial on the issue of damages only and thereby avoiding the cost in time and money of conducting an unconditional new trial. *Clarkson* v. *Rhode Island Co.*, 67 A. 448 (R.I. 1907); *see Labree* v. *Major*, 111 R.I. 657, 678-79, 306 A.2d 808, 820-21 (1973); *Fitzgerald* v. *Rendene*, 98 R.I. 239, 242, 201 A.2d 137, 139 (1964); *Lornitzo* v. *Rhode Island Hospital*, 79 R.I. 455, 460, 89 A.2d 831, 833 (1952); *Sayegh* v. *Davis*, 46 R.I. 375, 376, 128 A. 573, 573 (1925); Wright & Miller, *Federal Practice & Procedure* §2815 at 103 (1973).

Although defendant, in moving for a new trial, listed as one of his grounds that the verdicts were influenced by sympathy, passion and prejudice, neither in his brief nor in argument has he offered any basis for that assertion. Our own independent analysis of the record, moreover, fails to disclose the presence of such influence. In the circumstances, we acquiesce in the "trend towards limiting retrial to specific issues whenever possible." *Brimbau* v. *Ausdale Equipment Rental Corp.*, 120 R.I. 670, 672, 389 A.2d 1254, 1255 (1978). Accordingly, in John's case, where the portion of the verdict attributable to expenses incurred in connection with Cheryl's miscarriage is mathematically ascertainable, defendant will be entitled to a new trial on the issue of damages only, unless on or before July 23, 1979, he shall file in the office of the clerk of the Superior Court, a remittitur of all of the verdict in his favor in excess of $14,260. In Cheryl's case, however, it is impossible to extrapolate from the award the portion intended to compensate for the miscarriage. Therefore, defendant is entitled in that case to a new trial solely on the question of damages.

The defendant, however, urges two additional grounds that, if meritorious, would entitle him to an unconditional new trial. The first is that the trial justice erred in denying his motion to pass the case after plaintiffs' attorney, in his closing argument to the jury, allegedly stated that one of the investigating police officers was incarcerated at the Adult Correctional Institutions. The record certified to us, however, contains neither a transcript nor a summary of the closing arguments of counsel. In their absence we do not know the context in which the challenged remarks were made, or, indeed, whether in fact they were made. Consequently, we are unable to determine whether they could reasonably have prejudiced the jury and we cannot, therefore, pass upon the error asserted. *Chariho Regional High School District* v. *Town Treasurer*, 109 R.I. 30, 45, 280 A.2d 312, 320 (1971); *Surber* v. *Pearce*, 97 R.I. 40, 47, 195 A.2d 541, 544 (1963).

Finally, defendant argues that he is entitled to an unconditional new trial because the trial justice, in denying his new trial motion, failed to pass on the weight of the material evidence in the case or the credibility of the witnesses and thus neglected to perform the duties incumbent upon him as outlined in *Barbato* v. *Epstein*, 97 R.I. 191, 193, 196 A.2d 836, 837 (1964).[5] Failure to comply with the *Barbato* rule, however, does not *ipso facto* entitle a defendant to a new trial. Instead, its effect is limited to depriving the trial justice's decision on that motion of the great weight to which it would otherwise be entitled and requires application of the appellate rule. Under that rule we must determine from an independent examination of the record whether there is competent evidence which, viewed in the light most favorable to plaintiffs, could support the verdict. *Miller Enterprises Inc.* v. *Narragansett Redevelopment Agency*, 113

---

[5]The trial justice's only reference to the testimony concerning liability is the following:

"It's conceivable that the jury could have felt that there was no stop signs there at the time and both parties were to blame for this incident."

R.I. 618, 628, 324 A.2d 624, 630 (1974); *D'Andrea* v. *Sears, Roebuck & Co.*, 109 R.I. 479, 485, 287 A.2d 629, 632 (1972). We have made that examination and have concluded that there is such evidence. We are, therefore, precluded from interfering with the verdict on the ground urged. *Morinville* v. *Morinville*, 116 R.I. 507, 516, 359 A.2d 48, 54 (1976); *State* v. *Contreras*, 105 R.I. 523, 531-32, 253 A.2d 612, 617-18 (1969).

For the reasons indicated, the defendant's appeal is sustained in part, the judgments appealed from are reversed in part, and the case is remitted to the Superior Court with direction to grant the defendant a new trial on the question of damages only (1) with respect to the claim of Cheryl Morgan and (2) with respect to the claim of John Morgan unless on or before July 23, 1979, he files in the office of the clerk of the Superior Court a remittitur of all the verdict in excess of $14,260. If the remittitur is filed, the clerk is directed to enter judgment in John Morgan's favor on the verdict as thereby reduced.

*John McBurney*, for plaintiff.

*John Biafore*, for defendant.