William P. MORINVILLE et al.

v.

OLD COLONY CO-OPERATIVE NEW-PORT NATIONAL BANK et al.

No. 85-189-Appeal.

Supreme Court of Rhode Island.

March 26, 1987.

 

business transactions he established a line of credit through Claire L'Etoile, the Cumberland branch manager for Rhode Island Hospital Trust National Bank (Hospital Trust). Between 1976 and 1978 Morinville borrowed money from Hospital Trust on eight occasions.

In 1978 Hospital Trust would no longer extend credit to Morinville. L'Etoile was suspended from the bank.

After an unsuccessful attempt at obtaining credit through Woonsocket Savings & Trust, Morinville went to Old Colony. According to Morinville, Keith Flanagan of Old Colony told him that if the proper financial statements were filled out and approved, the bank would extend him credit. Morinville then spoke with plaintiff Joseph E. Lariviere, with whom he wished to set up a corporation to purchase and rent homes. Together they decided to submit financial statements to Old Colony. A closing meeting was set up with Old Colony for June 16, 1978.

Flanagan testified that Morinville had offered him a 2 percent kickback of the face amount of any 100–percent-financed loans made to persons sent to Old Colony by Morinville. Morinville told him that he, Morinville, had had a similar arrangement with L'Etoile at Hospital Trust.

Flanagan informed Robert Peterson, head of bank security, and other bank officials about his conversation with Morinville. Bank officials then contacted the Federal Bureau of Investigation (FBI). The FBI assigned agent Gilles Robert to the case.

Robert testified that both plaintiffs' names had first surfaced during his office's investigation of L'Etoile and that L'Etoile had plead guilty to charges arising out of banking transactions at Hospital Trust. Robert called the United States Attorney's office for Rhode Island (U.S. Attorney) and related the facts of what he thought may have been a bribery attempt by Morinville at Old Colony. Robert asked if Morinville's actions might be in violation of 18 U.S.C.

Joseph E. Marran, Jr., Pawtucket, for plaintiffs.

Dennis J. Roberts II, Roberts Carroll Feldstein & Tucker, Inc., Oleg Nikolyszyn, William A. Dimitri, Jackvony & Dimitri, Providence, for defendants.

## OPINION

MURRAY, Justice.

In this civil action the plaintiffs appeal the granting of a directed verdict for defendants Old Colony Co-operative Newport National Bank (Old Colony) and Robert Baggesen. The plaintiffs also challenge the admission of certain evidence, the trial justice's charge to the jury, and the jury verdict returned in favor of defendant Gilles Robert.

In 1976 plaintiff William P. Morinville was in the business of brokering homes and selling insurance. To facilitate these

§ 656.[1] The U.S. Attorney advised Robert that Morinville's actions were violative, and approved Robert's plan to pose as a bank official at the June 16 closing meeting for purposes of catching plaintiffs in the act.

At the June 16 closing meeting, Robert posed as Robert Baggesen, a senior vice president of Old Colony. The plaintiffs met Robert and Flanagan in the conference room at Old Colony, and Robert said that he and Flanagan wanted 5 percent of the loan amounts rather than the previously mentioned 2 percent. The plaintiffs agreed to this, and each was presented with a cashier's check for $5,000. The plaintiffs then handed the agreed-upon fee over to Robert, whereupon Robert informed them that he was an FBI agent and that they were under arrest.

The plaintiffs were taken into custody and later charged under 18 U.S.C. §§ 656 and 2.[2] These charges were later dismissed by the prosecution pursuant to Rule 48(a) of the Federal Rules of Criminal Procedure.[3]

The plaintiffs sued Old Colony, Baggesen, the FBI and Robert for slander, false arrest, assault and battery, and malicious prosecution. After numerous motions and proceedings, the complaint against the FBI was dismissed, and plaintiffs no longer pursued their cause of action in slander. A jury trial commenced in January 1985.

At the close of plaintiffs' case, the trial justice granted Old Colony's and Baggesen's motions for directed verdicts. At the trial's conclusion, the jury found for Robert on all counts. The plaintiffs' motion for a new trial was denied.

## I

### THE TESTIMONY OF ROBERT PETERSON

The plaintiffs argue that the trial justice erred in admitting into evidence a statement allegedly made by Robert Peterson, head of bank security for Old Colony, who died prior to trial. The disputed statement was put into evidence by Baggesen, who said, "Mr. Peterson stated to me that he felt that it [the conversation between Morinville and Flanagan] was a matter that ought to be turned over to, at least from the information that we had, to the Federal Bureau of Investigation." The plaintiffs' contend that the trial justice did not find, and could not have found, that Peterson's statement was made based on personal knowledge.

■ General Laws 1956 (1985 Reenactment) § 9–19–11 states:

"Declaration of decedent made in good faith.—A declaration of a deceased person shall not be inadmissible in evidence as hearsay if the court finds that it was made in good faith before the commencement of the action and upon the personal knowledge of the declarant."

---

1. 18 U.S.C. § 656 (1976) provides in part:

    "Whoever, being an officer, director, agent or employee of, or connected in any capacity with any Federal Reserve bank, member bank, national bank or insured bank, or a receiver of a national bank, or any agent or employee of the receiver, or a Federal Reserve Agent, or an agent or employee of a Federal Reserve Agent or of the Board of Governors of the Federal Reserve System, embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds or credits of such bank or any moneys, funds, assets or securities intrusted to the custody or care of such bank, or to the custody or care of any such agent, officer, director, employee or receiver, shall be fined not more than $5,000 or imprisoned not more than five years, or both; but if the amount embezzled, abstracted, purloined or misapplied does not exceed $100, he

    shall be fined not more than $1,000 or imprisoned not more than one year, or both."

2. 18 U.S.C. § 2 (1976) provides:

    "(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

    "(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

3. Fed.R.Crim.P. 48(a) provides:

    "The Attorney General or the United States attorney may by leave of court file a dismissal of an indictment, information or complaint and the prosecution shall thereupon terminate. Such a dismissal may not be filed during the trial without the consent of the defendant."

In *Desmarais v. Taft-Peirce Manufacturing Co.*, 105 R.I. 438, 444, 252 A.2d 445, 449 (1969), we said that a trial justice need not observe ritualistic procedures in determining compliance with § 9–19–11. If it can be reasonably inferred from the circumstances surrounding the making of the statement by the deceased declarant that the statement was based on personal knowledge and was made in good faith prior to the institution of the action at hand, the trial justice "may rely [on] such inferences and may, on that basis, admit such evidence without expressly finding compliance with each specific provision of the statute." *Id.*

■ Here, the statement simply conveyed the thought processes of the declarant regarding a possible future event, it was not meant to convey factual information. And unlike facts, personal thoughts are prima facie based on the "personal knowledge" of the declarant. Further, nothing in the record indicates that the statement was not made in good faith.

For these reasons and because it was conceded that Peterson died before the institution of this action, we find no abuse of discretion by the trial justice in admitting the statement.

## II

### THE DIRECTED VERDICT

The plaintiffs contend that the issue of whether defendants Old Colony and Baggesen took affirmative action in plaintiffs' arrest is a matter for the jury to decide. The defendants argue the evidence reveals that their only involvement in this dispute was forwarding factual information to the FBI, which exercised its independent judgment in making the arrest.

In reviewing the trial justice's decision on a motion for a directed verdict, this court is required, as is the trial justice, to examine the evidence in the light most favorable to the objecting party. We give no consideration to the weight of the evidence nor to the credibility of the witnesses. We draw from the evidence only those reasonable inferences that support the objecting party's position. If our examination reveals issues upon which reasonable minds could differ, the motion should be denied and the jury should be left to determine the facts of the case. If reasonable minds could not possibly differ as to the outcome, the motion should be granted. *See D'Arezzo v. Bowden*, 512 A.2d 843, 846 (R.I.1986).

■ There is no evidence in the record supporting the claims of assault and battery against Old Colony and Baggesen. Both plaintiffs testified that no bank official touched them in a harmful or offensive manner. Further, nothing in the record suggests that any Old Colony employee put plaintiffs in apprehension of harmful or offensive contact.

■ As to the claims of false arrest and malicious prosecution, the evidence suggests only that Old Colony and Baggesen passed information along to the FBI, and that they were merely passive participants in the arrest and prosecution.

■ In *Powers v. Carvalho*, 117 R.I. 519, 368 A.2d 1242 (1977), we adopted the rule that a private citizen who in good faith, albeit mistakenly, simply reports his or her version of the facts to the authorities is not liable in an action for false arrest. And it is established that a defendant cannot be held liable for malicious prosecution unless he or she takes some *active* part in instigating or encouraging the prosecution. If a defendant, in good faith, passes along accurate information to the proper authorities, he or she is not "actively" instigating the proceeding. Prosser & Keeton, *The Law of Torts*, § 119 at 872–73 (5th ed. 1984).

Hence, the trial justice properly directed verdicts for Old Colony and Baggesen on all counts.

## III

### THE JURY INSTRUCTIONS AND VERDICTS

The plaintiffs contend that the trial justice erred in his charge to the jury on probable cause. The charge given was in part as follows:

"The law is that a peace officer has probable cause to arrest without a warrant if the facts and circumstances known to him, or of which he has reasonably trustworthy information at the moment of arrest, that information warrants a man of reasonable caution, in the belief that an offense has been or is being committed by the person arrested.

\* \* \* \* \* \*

"There is another manner in which [you may conclude] that the defendant had probable cause. If the defendant proves to you by a fair preponderance of the evidence that he consulted with the Assistant United States Attorney for the purpose of ascertaining whether the facts in his possession authorized him to make an arrest, and the defendant submitted to the Assistant United States Attorney a full and correct statement of the facts within his knowledge and was advised by the United States Attorney that he could proceed to arrest, and the defendant Mr. Robert, proceeded in good faith upon that advice to arrest, then the defendant was justified in making the arrest and he will not be liable under a claim of false arrest."

■ A trial justice fulfills his or her obligation to charge the jury properly by framing the issues in such a way that the instructions "reasonably set forth all of the propositions of law that relate to material issues of fact which the evidence tends to support." *State v. Freeman,* 473 A.2d 1149, 1152 (R.I.1984). As long as this rule is followed, the particular language suggested by any one of the litigants need not be adopted.

■ In this case the trial justice's instruction was a proper statement of the relevant law. *See, e.g., State v. Haigh,* 112 R.I. 740, 743, 315 A.2d 431, 433 (1974); *Kitchen v. Rosenfeld,* 44 R.I. 399, 401, 117 A. 537, 538 (1922). We observe from the record that apparently neither Robert nor the U.S. Attorney advising him was aware

of the long-established federal law requiring that a bank *employee* be convicted under 18 U.S.C. § 656 before a nonemployee can be found guilty of aiding and abetting under 18 U.S.C. § 2. *See, e.g., Giragosian v. United States,* 349 F.2d 166, 167 (1st Cir.1965). Were he aware of this settled law, Robert surely would not have pursued his scheme to catch plaintiffs by posing as a bank officer, for such a scheme could not have resulted in a successful prosecution. Nevertheless, the jury must have found that Robert acted in good faith in relying on the advice provided by the U.S. Attorney, and under Rhode Island law this provides a complete defense against the false-arrest and malicious-prosecution claims.[4] *See, e.g., Kitchen, supra.*

We have considered the other arguments set forth by the plaintiffs and have determined that they are without merit.

For these reasons, the plaintiffs' appeal is denied and dismissed. The judgments appealed from are affirmed. The papers are remanded to the Superior Court.

---

**4.** Curiously, a similar "mistake of law" defense is not as yet available to a criminal defendant whose actions violate the law even if the defendant had previously consulted with an attorney

and had been assured that such actions were legal. *See, e.g., State v. Hunt,* 25 R.I. 75, 77, 54 A. 937, 937 (1903).